# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

ANTONIO CHAVEZ MOSES III,
Defendant and Appellant.

S258143

Fourth Appellate District, Division Three
G055621

Orange County Superior Court
16NF1413

December 28, 2020

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Liu, Cuéllar, Kruger, Groban, and Hoch[*] concurred.

---

[*]     Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. MOSES

S258143

Opinion of the Court by Corrigan, J.

Penal Code section 236.1, subdivision (c)[1] prohibits the human trafficking of a minor. It includes an attempt to commit trafficking as part of the definition of the substantive offense. Here we consider the attempt aspect of the definition. Defendant Antonio Chavez Moses III was convicted of attempting to recruit "Bella" as a prostitute. Bella had identified herself to Moses as a 17-year-old girl, but was, in fact, an undercover detective. The question here is whether, in light of the statutory language, he can be convicted of an attempt under the trafficking statute. We conclude that he can, based on this state's long-standing application of attempt law.

## I. BACKGROUND

As part of an undercover investigation to identify potential pimps, Detective Luis Barragan of the Santa Ana Police Department created a fictitious user profile for "Bella B." on a social network site used by pimps to recruit women and children

---

[1] Hereafter section 236.1(c). The provision reads, in relevant part: "A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [certain enumerated crimes] is guilty of human trafficking." (*Ibid.*)

All further undesignated statutory references are to the Penal Code.

for prostitution. He identified Bella as a 21-year-old female from Santa Ana and attached a photo he took from the Internet.

On April 16, 2016, Bella received a message from "FM Da Prince," saying "Good morning, Gorgeous." "Prince's" profile contained a picture of Moses and a meme composed of a photo of one hundred dollar bills with the words, "Everybody wants love. I just want money and someone to get it with."

Moses asked Bella where she was posting from. Barragan responded as Bella, saying she was in Vallejo "chasing the paper," a phrase used by prostitutes to mean she was engaging in sex for money. Moses replied, "You need to find your way to Daddy, your prince. I will make your life a whole lot easier, bet that." In Barragan's experience, the word "daddy" referred to a pimp. After Bella complained that business was slow, Moses responded, "Just get here, Boo. We can take it from there. Come as is. I'm a real one, not hard up for cash. I need loyalty, trust, and understanding [followed by a dollar sign emoji]. Going to come. I got enough game in this brain to make us all rich." Barragan considered this text to mark the beginning of a relationship between pimp and prostitute. Moses also wrote, "I'm not a gorilla [a pimp who is violent toward his prostitutes], nor am I what they call a pimp nowadays. I'm a true gentlemen [*sic*], baby, best believe and known all over the universe, real international."

Moses gave his phone number and urged Bella to call. He also sent her a text inviting her to "fuck with me," meaning to work for him, and to "come today." Bella responded that she would be in Southern California the following Monday and was "looking for a new start with someone who's smart." Moses

2

replied that she should "get to Daddy," and he would "step [her] game up" to "at least $1,000 a night."

The next day Moses messaged Bella promising to show her how to increase her income by soliciting customers at bars and casinos.  He explained, "See, it's not all on a bitch.  It's on me to guide you, show you, and protect you, but also lead you to the money in a manner that we get the most for our labor."   The following day Bella responded that she could not work in bars and casinos because she was only 17 years old.  She said:  "I want to keep it 100 with you.  I feel a strong connection, good vibe from you.  I'm struggling bad at this game maybe because I'm a youngster, too.  Daddy, just know that I'm 17.  Don't want to lie to you because you have been 100 with me from the get." Moses commented, "Damn, Boo, Damn," and asked when Bella's birthday was.   Bella responded that her birthday was in November.  Moses replied, "I never fucked around like that.  You not the police[?]  This Internet shit got niggas knocked off.  I'm not trying to go out like a sucka.  When's your birthday?"  When Bella said her birthday was November 27, 1998, Moses replied, "Oh, you about to be 18.  Cool, SMH [shake my head]."  Bella said, "I don't expect you to stick around.  I get it, but just had to be true."  Moses replied, "I got you as long as you keep it 100 always."  Bella said she was on a train to Anaheim, but Moses invited her to get off in Los Angeles.  She did not respond to this message.  Over the course of the next several days, both Bella and Moses confirmed they were not giving up on each other. Moses repeated his urging that Bella call and talk to him.

On April 27, Moses called Detective Sonia Rojo, who was posing as Bella. He again asked when her birthday was, and Rojo responded, "in November."  Moses suggested that Bella come work for him after she turned 18, and said he was "scared

as shit" because he knew a "homie in jail right now fighting life for that shit." Rojo responded that she needed someone to be there for her. Moses replied, "Yeah but I'm saying Bella, you got 7 months before you grown. Why don't we just wait like that?" Moses asked Bella to send him some pictures and commented that he might come to get her.

Moses and Rojo exchanged 13 text messages over the next week, and Moses again asked her to come to Los Angeles.

Moses and Rojo spoke on May 5th. Moses mentioned coming to get Bella, but complained that the traffic was bad and suggested she come to Los Angeles by train. He asked again when Bella's birthday was, and Rojo responded that it was in November. Moses commented, "Yup. I'm just making sure you ain't telling me no lies, bitch. This is a risk." He mused that Bella might be working with the "po-po." Moses urged Bella to stay with her pimp until her birthday, but Rojo responded she was "done" with him. Moses said, "Yeah but baby I don't wanna [sic] do the minor thing. That shit scares the fuck out of me," referencing his "homeboy" who had been "knocked at for the same shit." He commented, "I want to come get you bad as a mother fucker, but if I do, I'm going to have to take you to my momma[']s house until your birthday." Moses offered to drive over to get Bella, but Rojo said that she had to go and would call him later. In all, Bella and Moses communicated by text and telephone for just over three weeks, often several times a day.

On May 10, Moses and Rojo spoke on the phone. Rojo told him that she was in Orange County and asked if Moses would pick her up. They agreed to meet at a McDonald's restaurant in Anaheim. When he drove into the parking lot, vice officers were waiting, and Moses spotted them. He texted Bella, "I see you

not real. That's fucked up," and "You're the police, LMAO [laughing my ass off]." Moses drove away but was detained nearby with a cell phone in his car. When Rojo sent a text to the number she had been using for Moses, the phone vibrated. Detective Barragan then called the phone number Moses had given Bella during their text exchanges and the seized phone displayed Barragan's phone number.

At trial, the prosecution introduced evidence of text messages Moses had sent to other users on the networking site. In these messages, Moses identified himself as a pimp and advertised his services, claiming an ability to increase earnings. He sought to recruit others to his "team," which he claimed numbered five women.

The defense presented an expert on human trafficking. He reviewed the exchanges between Moses and Bella and saw no evidence that Moses was trying to target a minor. He opined that Moses's interactions with Bella did not rise to the level of human trafficking. Moses did not ask Bella for sex or money, and did not attempt to manipulate, isolate, or control her. He acknowledged, however, that Moses was in the very early recruitment phase of the relationship.

A jury convicted Moses of human trafficking of a minor, attempted pimping of a minor, and pandering.[2] The court separately found that Moses had suffered a prior strike

---

[2] Sections 236.1(c)(1), 266h, subdivision (b)(1), 664, 266i, subdivision (a)(2).

conviction for manslaughter with the personal use of a firearm, and imposed a sentence of 24 years in prison.[3]

The Court of Appeal reversed Moses's human trafficking conviction. The majority held that he could not be convicted under that provision, but only under the general law of attempt. (*People v. Moses* (2019) 38 Cal.App.5th 757, 764, 766–767 (*Moses*).) We ordered review on our own motion following an invitation from the Orange County District Attorney's Office to do so. Subsequently, another panel of the same Court of Appeal upheld a human trafficking conviction based on that defendant's conduct toward a fictitious minor, creating a conflict in the appellate courts on this issue. (*People v. Clark* (2019) 43 Cal.App.5th 270, 274, review granted Mar. 11, 2020, S260202 (*Clark*).)

## II. DISCUSSION

The general law governing attempt is found in section 21a, which states, "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Section 664, which sets out the punishment for an attempt, was enacted in 1872 as part of California's original Penal Code. The substantive law of attempt was found in the common law. (See *People v. Miller* (1935) 2 Cal.2d 527, 530, and cases cited therein, including *People v. Mize* (1889) 80 Cal. 41, 43 and *People v. Murray* (1859) 14 Cal. 159; see generally 2 LaFave, Substantive Criminal Law (3d ed. 2018) § 11.2(a), pp. 285–288.) In 1986, Section 21a was

---

[3]     Sections 667, subdivisions (b)–(i), 1170.12. The court imposed the upper term for human trafficking, doubled based on the prior strike. Punishment for the other offenses was imposed but stayed under section 654.

added to codify the well-established definition of attempt. (Stats. 1986, ch. 519, § 1, p. 1859; *People v. Williams* (2001) 26 Cal.4th 779, 789 (*Williams*)).

As we noted in *People v. Dillon* (1983) 34 Cal.3d 441, 453 (*Dillon*): " 'One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime.' [Citation.] Accordingly, the requisite overt act 'need not be the last proximate or ultimate step towards commission of the substantive crime . . . . [¶] Applying criminal culpability to acts directly moving toward commission of crime . . . is an obvious safeguard to society because it makes it unnecessary for police to wait before intervening until the actor has done the substantive evil sought to be prevented. It allows such criminal conduct to be stopped or intercepted when it becomes clear what the actor's intention is and when the acts done show that the perpetrator is actually putting his plan into action.' [Citations.]"

Liability for an attempt does not require that any element of the underlying offense actually be accomplished. (*People v. Chandler* (2014) 60 Cal.4th 508, 517 (*Chandler*).) "[A] person may be convicted of an attempt to commit a crime he never could have completed under the circumstances." (*Ibid*; accord, *People v. Peppars* (1983) 140 Cal.App.3d 677, 688.)

As a result, factual impossibility is not a defense to the crime of attempt. The defendant's " ' "guilt or innocence is determined as if the facts were *as he perceived them*." ' " (*People v. Reed* (1996) 53 Cal.App.4th 389, 396 (*Reed*); accord, *People v.*

7

*Beardslee* (1991) 53 Cal.3d 68, 87.)  For example, a person who intends to kill and shoots at the victim can be guilty of attempted murder, even if it is later discovered that the gun contained only blank rounds.  The shooter's effort to kill, coupled with the requisite intent, completes the crime of attempted murder, even if the means employed turn out to be ineffectual. A thief who intends to steal a valuable vase from a museum and takes the vase from a display can be convicted of attempted grand theft, even if the museum had placed an inexpensive duplicate in the showcase.  The thief's act of taking the object, with the intent to steal the more valuable original, completes the crime of attempted grand theft, even if the aim is unachieved because the copy had been substituted.  (See *Chandler, supra,* 60 Cal.4th at p. 517; *id.* at p. 528 (conc. & dis. opn. of Corrigan, J.) [citing examples]; *People v. Hickman* (1939) 31 Cal.App.2d 4, 12; see generally 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Elements, §§ 65–70, pp. 356–363.)

In *Reed, supra,* 53 Cal.App.4th 389, the defendant was convicted of attempted molestation of a child under the age of fourteen.  (§§ 288, subd. (a), 664.)  He had written to an undercover detective who was posing as a woman named "Helen," the mother of two young girls.  (*Reed*, at p. 393.)  Reed said he would give Helen's daughters a sexual education and it was agreed he would meet the children at a motel.  He was arrested when he arrived at the location having brought along sex toys and lubricating jelly.  (*Id.* at pp. 394–395.)  He argued on appeal that the attempt to molest an imaginary child was not a crime.  Rejecting that assertion the court explained:  Those "charged with attempting to commit a crime cannot escape liability because the criminal act they attempted was not completed due to an impossibility which they did not foresee

8

. . . ." (*Id.* at p. 396.) The nonexistence of an essential object, such as a defined victim, is not a defense to the crime of attempt. (*Id.* at p. 397.) "[I]f the circumstances had been as defendant believed them to be, he would have found in the room he entered two girls under fourteen available for him to engage in lewd and lascivious conduct with them. Defendant's failure to foresee that there would be no children waiting does not excuse him from the attempt to molest." (*Ibid.*)

The law of attempt is replete with such examples. *People v. Rojas* (1961) 55 Cal.2d 252 upheld a conviction for attempting to receive stolen property when the defendants took possession of items they believed to be stolen, but which had already been recovered by police. (*Id.* at pp. 254, 256–258.) *In re Ryan N.* (2001) 92 Cal.App.4th 1359 upheld a conviction for attempting to assist a suicide after the defendant encouraged the victim to take pills which were not, in fact, lethal. (*Id.* at pp. 1380–1384.) In *People v. Thompson* (1993) 12 Cal.App.4th 195 the defendant was held properly convicted of attempted rape when, unbeknownst to him, the victim had expired before the act of intercourse. (*Id.* at pp. 201–203; see also *People v. Meyer* (1985) 169 Cal.App.3d 496, 503–506 [attempt to furnish material for the manufacture of a controlled substance]; *People v. Parker* (1963) 217 Cal.App.2d 422, 426–428 [attempted receipt of stolen property]; *People v. Siu* (1954) 126 Cal.App.2d 41, 43–44 [attempted possession of narcotics].) The overarching principle is that, when a person intends to commit a crime and takes a direct but unsuccessful step towards achieving that end, he has committed an attempt. He cannot find safe harbor in his own ineptitude.

Another aspect of the law of attempt involves its punishment. Section 664 sets out different penalties depending

on the nature of the crime attempted. Subdivisions (a) and (b) generally provide that the punishment for an attempted crime is one half the term imposed for the completed offense.[4] The penalties listed in section 664 apply when "no [other] provision is made by law for the punishment of those attempts." The general punishment statute, then, explicitly contemplates that other statutes may impose a different punishment for an attempt to commit them. A few statutes, like the one at issue here, punish attempts as stringently as the completed crime. (See discussion, *post*, at pp. 13–15.) Notably, section 664 is solely a sentencing provision. It does not change the definition of attempt set out in section 21a. The question of how Moses's conduct can be punished lies at the heart of this dispute.

The human trafficking statute (§ 236.1) was modified in 2012 by Proposition 35, the Californians Against Sexual Exploitation Act (CASE Act). (Prop. 35, § 6, as approved by voters, Gen. Elec. (Nov. 6, 2012), eff. Nov. 7, 2012.) The measure added subdivision (c), which provides: A person "who causes, induces, or persuades, *or attempts to cause, induce, or persuade*, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [certain enumerated crimes[5]] is guilty of

---

[4] Other portions of section 664 address attempts to commit murder.

[5] The enumerated statutes are sections 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, and 518. They define various crimes including pimping; pandering; procuring a minor for prostitution or lewd acts; abduction of a minor for prostitution; sale, distribution, or advertising of obscene matter; exploiting or employing a minor to produce obscene matter; obscene live conduct in public; and extortion.

human trafficking." (§ 236.1(c), italics added.) For brevity, we will use the verb "induce" to encompass the phrase "causes, induces, or persuades."

The parties agree that attempting to induce a police decoy posing as a minor to commit a commercial sex act is a punishable offense. They disagree whether the crime falls under the provisions of section 236.1(c), or the traditional attempt statutes, sections 21a and 664. The competing positions reflect squarely on punishment. If defendant's crime falls under section 236.1(c)(1), the penalty is five, eight, or 12 years in state prison.[6] By contrast, the penalty for attempt under section 664 would be one half the term imposed for the completed offense, with limited exceptions not applicable here. (§ 664, subd. (a).)

As noted, the general rule is that factual impossibility is not a defense to attempt. Therefore, Moses's argument hinges on whether section 236.1(c) defines attempted trafficking of a minor in a way that abrogates the general impossibility rule.

*A. Statutory Language*

The parties initially debate the meaning of the statutory language. Section 236.1(c) is violated in two circumstances: when a person, acting with the requisite intent, (1) induces a minor to engage in a commercial sex act; or (2) attempts to induce a minor to engage in such an act. The statute codifies the crime of attempted human trafficking of a minor and

---

[6] The statute provides a penalty of 15 years to life if the offense involves force, fear, fraud, or other enumerated circumstances. (§ 236.1(c)(2).) None of those circumstances were alleged here.

punishes actual inducement and attempted inducement in the same way.

Moses argues that the word "attempts" modifies only the language "to cause, induce, or persuade." (§ 236.1(c).) He urges the next phrase, "a person who is a minor," (*ibid.*) creates a distinct statutory element that must be proved whether the crime is completed or merely attempted. He cites *People v. Shields* (2018) 23 Cal.App.5th 1242 (*Shields*) for the proposition that the attempt provision of subdivision (c) "is distinct from the separate crime of attempt [defined under section 21a] because a completed violation of the statute requires a person under the age of 18 while an attempt to violate the statute does not." (*Shields*, at p. 1257.)

On the other hand, the People urge that the word "attempts" modifies all elements of section 236.1(c), including the requirement of "a person who is a minor." Because the longstanding law of attempt does not require completion of any other element, aside from specific intent, they urge the targeted victim need not, in fact, be a minor. Stated another way, factual impossibility is not a defense to section 236.1(c), just as it is not a defense under the general law of attempt. This is the position taken by the majority in *Clark, supra*, 43 Cal.App.5th at pages 274, 279–285, review granted.

As the divergent views of the Courts of Appeal reflect, read in the abstract the language of the statute is susceptible to differing interpretations. However, the electorate's decision to include "attempts" in the definition of human trafficking is significant because of another statutory provision. Section 7 defines words and phrases. It notes that the "following words have in this code the signification attached to them in this

section, unless otherwise apparent from the context." (*Ibid.*) Subdivision (16), the substance of which has appeared in the statute since its enactment as subdivision (25) in 1872, now reads: "Words and phrases must be construed according to the context and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." (§ 7, subd. (16).) " ' "[A]fter the courts have construed the meaning of any particular word, or expression, and the [electorate] subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts." ' " (*People v. Lopez* (2005) 34 Cal.4th 1002, 1007 (*Lopez*); accord, *People v. Lawrence* (2000) 24 Cal.4th 219, 231 [principle applies to legislation adopted through initiative].) Because the term "attempt" has acquired a "peculiar and appropriate meaning in law," it "must be construed" according to that meaning. (§ 7, subd. (16); accord, *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19.)

Previous cases have consistently looked to section 21a to define the elements of an attempt that has been incorporated into a statute defining the substantive crime. For example, section 288.3, subdivision (a) provides that "[e]very person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit [certain enumerated sex offenses] involving the minor shall be punished

by imprisonment . . . ."[7]   In *People v. Korwin* (2019) 36 Cal.App.5th 682 (*Korwin*) the Court of Appeal rejected the defendant's argument that section 288.3 required an actual minor victim.  Korwin urged, as Moses does here, that at most, he could be convicted and sentenced under sections 21a and 664. The court held instead that "section 288.3, subdivision (a), incorporates attempt into the crime itself," (*Korwin,* at p. 688), and that "lack of an actual minor is not a defense to an attempt to commit a sex offense against a minor" (*id.* at p. 689).

Other cases have rejected arguments when the People have sought to evade the application of section 21a for statutes that incorporate an attempt into the definition of a substantive offense. *People v. Bailey* (2012) 54 Cal.4th 740 (*Bailey*) involved section 4530, subdivision (a) which provides: "Every prisoner confined in a state prison who, by force or violence, escapes or attempts to escape therefrom" is punishable by imprisonment in the state prison for a term of two, four, or six years.  The People acknowledged that section 21a requires a specific intent to commit the crime attempted.  However, they argued, "because section 4530 codifies the offense of escape in a different provision, section 21a is inapplicable," and only a general intent was required.  (*Bailey*, at p. 750.)  We rejected that argument and looked to section 21a to define the required elements for the attempt provision.  (*Bailey*, at p. 749.)

Similarly, *People v. Gallegos* (1974) 39 Cal.App.3d 512 (*Gallegos*) dealt with a separate statute embodying an attempt.

---

[7]   Punishment for both the completed offense and the attempted offense is identical: "imprisonment . . . for the term prescribed for an attempt to commit the intended offense." (§ 288.3, subd. (a).)

Section 4532, subdivision (b)(1) prohibits escape "or attempts to escape" from a county jail.[8] Trial evidence showed that Gallegos walked beyond a county jail perimeter. The question was whether the People were required to show that, when he did so, he had the specific intent to escape, or whether a general intent to do an act which would have effected his escape was sufficient. In arguing for general intent the People urged that, because attempted escape was included in section 4532, the specific intent element of section 21a did not apply. (*Gallegos*, at pp. 515–516.) The People's argument was rejected: "Although an attempt to escape is made punishable under Penal Code section 4532 and not under Penal Code section 664 [citations], . . . the essential elements of an attempt to commit a crime, so as to make the attempt itself punishable, are present in an attempt to escape as well as in those attempts made punishable under Penal Code section 664. [¶] The argument is unsound that because the punishment for attempted escape is specifically provided for in section 4532, the crime is moved out of the class of attempts of which a specific intent is an element, to the status of a substantive crime that requires only a general intent to commit the act . . . . The argument, in opening the possibility that there is such a crime as an attempt to attempt to escape, leads onto a logical merry-go-round." (*Id.* at p. 516.)

---

[8] The statute provides in part that a prisoner arrested for, charged with, or convicted of a felony, who "escapes or attempts to escape" from the county jail or other places of custody or confinement without the use of force or violence, is subject to imprisonment for 16 months, two years, or three years, or to a county jail sentence not to exceed one year. (§ 4532, subd. (b)(1).)

The above statutes all differ in some respects from the language of section 236.1(c). *Korwin*, for example, emphasized the language in section 288.3, subdivision (a), requiring that the defendant "knows or reasonably should know that the person is a minor," and distinguished section 236.1(c) and *Shields*, *supra*, 23 Cal.App.5th 1242, on that basis. (*Korwin, supra*, 36 Cal.App.5th at pp. 688–689.) *Bailey* and *Gallegos* looked to section 21a to define the requisite specific intent for attempt under sections 4530, subdivision (a) and 4532, subdivision (b)(1). (*Bailey, supra*, 54 Cal.4th at pp. 749–750; *Gallegos, supra,* 39 Cal.App.3d at p. 516.) But neither escape statute includes language raising an issue of factual impossibility similar to section 236.1(c)'s mention of a minor victim. Nonetheless, there is a consistent theme in this precedent: Courts have looked to section 21a to define the elements of attempt where that offense is incorporated into the substantive crime, at least in the absence of a more specific definition in the statute itself. Section 236.1, subdivision (h) does define several key terms, but it contains no alternative definition of "attempts" to replace the general definition given in section 21a.

Here the Court of Appeal majority concluded the attempt language in the statutory definition of this crime functions differently from the general law of attempt: "An attempt under section 21a does not require a victim. Instead such an attempt requires two inchoate elements: (1) criminal intent; and (2) an ineffectual act toward committing the crime. In contrast, the specific language of section 236.1(c) requires an additional element: the necessity that the victim be a minor. The 'context' of the two statutes is therefore different because the language of each is different: section 236.1(c) includes an element that section 21a does not." (*Moses, supra,* 38 Cal.App.5th at p. 763.)

Because defendant did not direct his efforts at a person who was actually a minor, the majority reversed his conviction. (*Id*. at pp. 759, 761, 767.) In doing so the majority embraced the holding of *Shields*, *supra*, 23 Cal.App.5th at pages 1255–1257, which also reversed a section 236.1(c) conviction under similar circumstances. (*Moses*, at pp. 761–762, 766.)

The dissenting justice would have held that section 236.1(c) "penalizes both completed human trafficking acts and attempts to commit the proscribed human trafficking acts. Because 'factual impossibility is not a defense to a charge of attempt' [citation], the jury legally could convict Moses of human trafficking under [the statute] despite the absence of an actual minor victim." (*Moses*, *supra*, 38 Cal.App.5th at p. 767 (conc. & dis. opn. of Aronson, Acting P. J.).) The dissent reasoned that the purpose of the statute was to strengthen the laws against human traffickers and online predators who would sexually exploit women and children. (*Id*. at p. 768; see discussion, *post*, at pp. 24–27.) Basic tenets of statutory interpretation presume that the electorate intended to incorporate the traditional definition of attempt into the human trafficking statute. (*Moses*, at pp. 769–770 (conc. & dis. opn. of Aronson, Acting P. J.).) A counter interpretation, the dissent noted, would create "an attempt to commit an attempt." (*Id*. at p. 769.) The dissent reasoned that the law recognizes no such creature.

The majority's analysis missed the mark for two reasons. First, it discerned the creation of a new element, untethered to the settled understanding of attempt law. Second it concluded that the language of section 21a and section 236.1(c) is significantly different. In fact, the operative language employing the technical word "attempt" is the same. Section

236.1(c) is not different because it creates an altered understanding of attempt. It is different because, unlike some other attempt provisions, it expresses the electorate's intent to punish both the trafficking of a minor and the attempt to do so in the same way. The ability to make this sentencing choice is explicitly recognized in section 664.

The Court of Appeal majority cited *People v. Colantuono* (1994) 7 Cal.4th 206 for the proposition that the " 'meaning of "attempt" can vary with the criminal context.' " (*Moses, supra*, 38 Cal.App.5th at p. 763, quoting *Colantuono*, at p. 216.) Its reliance was misplaced. That case dealt with a specific and historical understanding of the offense of assault, which had been defined in the common law. In examining the statutory definition of assault, which codified the common law understanding (see *People v. Yslas* (1865) 27 Cal. 630, 632; Hinkley, *Assault-Related Conduct under the Proposed California Criminal Code* (1974) 25 Hastings L.J. 657, 658), we observed that an assault is defined as " 'an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another.' " (*Colantuono*, at p. 214.) We then held that, unlike other attempted crimes, an assault is a general intent offense. (*Id*. at pp. 216–217.) In reaching this conclusion, we specifically noted that the crime of assault was statutorily defined by the Legislature of 1872 and the reference to attempt was used "only in its ordinary sense, not as the term of art we currently conceptualize." (*Id*. at p. 216.) We also observed that " '[t]he original concept of criminal assault developed at an earlier day than the doctrine of criminal attempt in general . . . .' " (*Ibid*.) Accordingly, we concluded that assault "is not simply an adjunct of some underlying offense [like criminal attempt], but an independent crime statutorily delineated in

terms of certain unlawful conduct immediately antecedent to battery." (*Ibid.*) "[O]ur criminal code has long recognized this fundamental distinction between criminal attempt and assault by treating these offenses as *separate and independent* crimes. (Compare § 240 with §§ 663, 664.)" (*Williams*, *supra*, 26 Cal.4th at p. 786.) The majority's reliance on this fundamentally distinct provision led it astray.

As the court in *Clark* has pointed out, section 236.1(c) is distinguishable from the provision defining assault. Unlike assault, the crime of human trafficking of a minor is not "a historical anomaly 'developed at an earlier day than the doctrine of criminal attempt in general.' " (*Clark*, *supra*, 43 Cal.App.5th at p. 282, review granted.) Instead, the language of section 236.1(c) defining human trafficking was "chosen by the electorate in 2012, some 26 years after the enactment of the statutory definition of 'attempt' (Stats. 1986, ch. 519, § 1, p. 1859), and the even earlier adoption of similar language at common law." (*Clark*, at p. 282.) Accordingly, " ' "the presumption is almost irresistible" ' " that the word "attempt" in section 236.1(c) is used in the " ' "precise and technical sense" ' " provided by section 21a. (*Lopez, supra,* 34 Cal.4th at p. 1007.) The authorities summarized above demonstrate that, aside from the requisite intent, no *other* element of the completed offense is required to prove human trafficking of a minor under the attempt provision of the statute.

Moses relies on the grammatical structure of section 236.1(c). In his view, the word "attempts" modifies the operative verbs "cause, induce, or persuade," making the age of the inducee a distinct statutory element. The People counter that the word "attempts" is a transitive verb that modifies the entire phrase "to cause, induce, or persuade, a person who is a minor."

The phrase "a person who is a minor" cannot be artificially isolated from the transitive verb to create a separate element of the offense. The People's reading of the statute appears the more logical. The entire phrase "a person who is a minor at the time of the commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [certain enumerated crimes]" (*ibid.*) applies both to the completed act and an attempt to complete that act. However, repeating the entire phrase with respect to both prongs would be overly cumbersome. It is reasonable to conclude that the drafting goal was to achieve word economy, not to set out "a person who is a minor" as a stand-alone element. Under this view, the word "attempts" operates to modify all of the elements of the statute, making it unnecessary to prove that the defendant targeted an actual minor victim. Moses's contrary argument results in an artificial parsing of the sentence's structure.

Subdivision (c) must be understood in the context of the human trafficking statute of which it is a part. The first two subdivisions of section 236.1 define human trafficking as "depriv[ing] or violat[ing] the personal liberty of another with the intent to obtain forced labor or services," (*id.*, subd. (a)), or with "the intent to effect or maintain . . . violation[s] of" various laws regulating prostitution, pimping and pandering, pornography, and extortion (*id.*, subd. (b)). Subdivision (c) does not speak of violating a victim's personal liberty. Instead it defines human trafficking another way: the inducement of a minor to engage in commercial sex acts. Subsequent provisions make clear that neither a minor's consent (*id.*, subd. (e)), nor a mistake of fact as to a victim's age (*id.*, subd. (f)), is a defense. Subdivision (c) specifically targets trafficking minors. A

*completed* violation of subdivision (c) will, obviously, involve the inducement of a particular person, and that person must be a minor. By contrast, to violate subdivision (c) as an *attempt*, the defendant must *intend* to induce a minor, but the target of that inducement need not be an actual minor. This understanding of the statute supports a conclusion that, as long as the defendant has attempted to induce a person and intends that the object of his inducement be a minor, the elements of the attempt provision are satisfied. This understanding honors the general law of attempt that punishes a criminal intent coupled with an ineffectual act done towards its commission.[9]

The sentence structure of section 236.1(c) does not reflect an intent by voters to deviate from the established law of attempt. Instead it conveys the voters' intent that human trafficking of a minor, whether successfully completed or merely attempted, is to be punished in a uniform way. As the court observed in *Clark, supra*, 43 Cal.App.5th 270, review granted, "[t]he *only* difference between *Reed* and cases like it [involving prosecutions under section 664], and the instant case is that here the crime of attempt is made part of section 236.1(c), making the attempted act equally blameworthy to the completed act and making equal the punishment for both the attempted act and the completed act. The difference does *not* lie in a 'plain reading' of the statute. It lies instead in the electorate's choice to punish both the attempted act and the completed act equally." (*Id*. at p. 284.)

---

[9]     For an analysis of when the planning or preparation of a crime ripens into an attempt, see generally *People v. Johnson* (2013) 57 Cal.4th 250, 258 & fn. 4 and *People v. Watkins* (2012) 55 Cal.4th 999, 1021.

The Court of Appeal majority reasoned that punishing an attempt under section 236.1(c) without an actual minor victim is inconsistent with the provisions of subdivision (f) of the statute. (*Moses, supra,* 38 Cal.App.5th at pp. 762, 764.) That subdivision provides: "Mistake of fact as to the age of a victim of human trafficking *who is a minor at the time of the commission of the offense* is not a defense to a criminal prosecution under this section." (§ 236.1, subd. (f), italics added.) The Court of Appeal reasoned that "[u]nder subdivision (f), it is no defense that a defendant may have believed a victim was 18 or older and therefore did not actually intend to traffic a minor; even absent such intent, the conduct constitutes a violation of section 236.1(c)." (*Moses*, at p. 762.) The defendant "bears the risk, regardless of whether he believed the minor was of age or not, that his trafficking target is a minor." (*Id.* at p. 764.) The majority acknowledged that if " 'there is no actual victim and therefore it is factually impossible to complete the crime,' " traditional attempt principles would hold the defendant liable only if he or she actually intended to traffic a minor. (*Id.* at p. 762, quoting *Shields*, *supra*, 23 Cal.App.5th at p. 1257.) Because subdivision (f) precludes a mistake of fact as to the victim's age, the majority concluded that the attempt provision of the statute necessarily must require an actual minor in order to harmonize the two subdivisions. (*Moses*, at pp. 762, 764.)

The logical flaw here is the assumption that subdivision (f) applies when there is no actual minor victim. By its terms it does not. The statute eliminates a mistake of age defense if the defendant successfully induces a minor, even if acting under a mistake of fact. It does not speak to the converse situation, when the defendant *attempts* to induce a person the defendant actually believes to be a minor but who is in fact an adult. Under

the provisions of subdivision (c) and the law of attempt, such conduct is punishable as human trafficking so long as the defendant *intended to induce a minor* to engage in such conduct. There is no inconsistency between disallowing a mistake of age defense when the victim is an actual minor and requiring a specific *intent* to induce a minor when the defendant unwittingly targets a police decoy. Nothing in subdivision (f) speaks to the latter intent requirement.[10]

Moses observes that the drafters of the initiative could have expressly prohibited acts " 'directed towards a minor, *or a person who the defendant subjectively believes is a minor*.' " (Quoting *Clark, supra*, 43 Cal.App.5th at p. 300 (dis. opn. of O'Leary, P. J.), review granted.) It is often possible to craft more explicit language after the fact, but there is no question that the voters incorporated attempts into the substantive definition of section 236.1(c). We apply the settled rule of statutory construction that the electorate used the word "attempts" in the " ' "precise and technical sense" ' " ascribed to it by statute and case law. (*Lopez, supra,* 34 Cal.4th at p. 1007; accord, § 7, subd. (16).) The well-established law at the time of the initiative's passage was that "the commission of an attempt does not require proof of any particular element of the completed crime" other than intent (*Chandler, supra,* 60 Cal.4th at p. 517, and cases cited), nor did it allow for a defense of factual impossibility.

---

[10] We are not called upon here to determine the interplay between subdivision (f) and the specific intent required for the attempt prong of section 236.1(c) when the defendant attempts, but fails, to induce an *actual minor* to engage in a commercial sex act. We offer no view on whether a mistake of fact as to the victim's age would be a defense in that situation.

## B. Ballot Materials and Statutory Aim

Although the statutory language discussed above suggests an intent to incorporate traditional attempt principles into section 236.1(c), the specific textual formulation alone does not definitively answer the question. Accordingly, we consider the ballot materials and the aims to be achieved by the enactment. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.) That exercise reveals that voters did not intend the result defendant urges.

The ballot materials make clear that a primary goal of Proposition 35 was to stop the exploitation of children by online predators. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 35, p. 46 (hereafter Voter Information Guide).) The findings and declarations adopted by the electorate in support of the law provide: (1) "Protecting every person in our state, particularly our children, from all forms of sexual exploitation is of paramount importance"; (2) "[T]he predatory use of [internet] technology by human traffickers and sex offenders has allowed such exploiters a new means to entice and prey on vulnerable individuals in our state"; and (3) "We need stronger laws to combat the threats posed by human traffickers and online predators seeking to exploit women and children for sexual purposes." (Voter Information Guide, *supra*, text of Prop. 35, § 2, p. 101.) The stated purpose of the law was to "ensure just and effective punishment of people who promote or engage in the crime of human trafficking." (*Id.*, § 3, p. 101.) To that end, the measure increased the punishment for human trafficking of minors from four, six, or eight years in prison (former § 236.1(c), added by Stats. 2005, ch. 240, § 7, p. 2507), to five, eight, or 12 years for nonforcible trafficking, and 15 years to life when the offense involves force, fear, fraud, or other

enumerated factors. (§ 236.1(c)(1) & (2), as amended by Prop. 35, § 6, Gen Elec. (Nov. 6, 2012).)[11]

The measure's reference to identifying and punishing online child predators is relevant here. Sting operations are a common and effective method of identifying such offenders before they victimize an actual child. (See *Korwin, supra*, 36 Cal.App.5th at p. 690; *U.S. v. Meek* (9th Cir. 2004) 366 F.3d 705, 719.) But Moses's interpretation of section 236.1(c) forces law enforcement to choose between traditional sting operations and maximum punishment for criminal offenders. As the defense acknowledged at oral argument, its reading of the statute means a predator could be convicted under the attempt prong only if an actual minor was used in the sting operation, something officers would obviously be reluctant to do. (See *U.S. v. Gagliardi* (2d Cir. 2007) 506 F.3d 140, 146–147.) Use of an undercover officer posing as a minor would result in lesser punishment under the provisions of section 664. By contrast, interpreting the attempt provision of section 236.1(c) so as not to require an actual minor victim furthers Proposition 35's stated purposes. It enhances law enforcement investigatory efforts while at the same time furthering the measure's objective to "increase[] the current criminal penalties for human trafficking under state law." (Voter Information Guide, *supra*, analysis of Prop. 35 by Legis. Analyst, at p. 43.)

Again, this approach is consistent with the long-held foundation for criminalizing attempts. " 'Applying criminal

---

[11] Former section 236.1(c) was purely an enhanced sentencing provision related to trafficking based on a violation of personal liberty. It was removed and replaced with the new subdivision (c) by the initiative's enactment.

culpability to acts directly moving toward commission of crime . . . is an obvious safeguard to society because it makes it unnecessary for police to wait before intervening until the actor has done the substantive evil sought to be prevented. It allows such criminal conduct to be stopped or intercepted when it becomes clear what the actor's intention is and when the acts done show that the perpetrator is actually putting his plan into action.' [Citations.]" (*Dillon, supra,* 34 Cal.3d at p. 453.)

In resisting this conclusion, the Court of Appeal noted that generally attempts may be considered " ' "less serious" ' " than crimes carried through to completion." (*Moses, supra,* 38 Cal.App.5th at p. 765, quoting *In re Nuñez* (2009) 173 Cal.App.4th 709, 736.) It is often true that attempt offenses are considered less serious and statutes may reflect that policy choice. However, it is also true that legislators and the electorate may consider the harm occasioned by some attempts to be on a par with a completed crime. It is their prerogative to enact statutes that reflect that determination. (*People v. Flores* (1986) 178 Cal.App.3d 74, 84–89, cited with approval in *People v. Wilkinson* (2004) 33 Cal.4th 821, 838, 840.)[12]

---

[12] We note that the Court of Appeal's reliance on *In re Nuñez, supra,* 173 Cal.App.4th at page 736, and the case it quoted, *Solem v. Helm* (1983) 463 U.S. 277, 293, is somewhat strained. Both cases involved a cruel and unusual punishment challenge, and neither involved an attempt. Nuñez was convicted of kidnapping for ransom (*Nuñez,* at p. 714) and Helm for uttering a " 'no account' " check for $100 (*Solem,* at p. 281). Those cases quoted the general observation from Blackstone's Commentaries as part of their analysis of the magnitude of harm the defendant caused in evaluating a constitutionally acceptable punishment.

The electorate's intent to ensure just and effective punishment of child predators is demonstrated by section 236.1, subdivision (f), which holds the defendant liable for targeting an actual minor victim even if the defendant believes the victim is an adult.  There is no reason to conclude from the ballot materials that the electorate intended to impose *lesser* punishment on a defendant who *intentionally* targets a minor but fails in the attempt because the target is actually an adult.  Given the initiative's stated purpose, it is more reasonable to conclude that section 236.1(c) operates as a one-way ratchet to increase punishment for both such offenders.

In an argument reminiscent of that in *Bailey* and *Gallegos*, the People urge that a defendant need not intend to induce a minor to commit an attempt under section 236.1(c).  Rather, they contend the necessary specific intent is only the intent to violate one of the criminal statutes listed in that subdivision.  They rely on *People v. Branch* (2010) 184 Cal.App.4th 516.  That case involved a conviction for attempted pimping of a minor under the age of 16 (§§ 266h, subd. (b)(2), 664) against J.V., a 15-year-old victim.  The court refused the defense request to instruct the jury that his good faith, reasonable belief J.V. was 18 was a defense to the attempt crime.  Instead, the court instructed that to convict, the jury must find J.V. was under the age of 16 at the time of the charged crimes.  (*Branch*, at p. 520.)  On appeal, the court found no instructional error.  It reasoned: "[T]he criminal intent for the crimes of attempted pimping and pandering of a minor is the attempt to pimp and pander; the age of the victim only affects the severity of the sentence, not the criminality of the conduct.  Regardless of his belief as to J.V.'s age, defendant acted with criminal intent." (*Id*. at p. 522.)

Assuming without deciding that *Branch*'s interpretation of section 266h is correct, the case is distinguishable because it did not involve an issue of factual impossibility. The victim in that case was 15 years old and the jury was instructed that it must find the victim was under the age of 16 in order to convict. Moses, on the other hand, could not be convicted of human trafficking under the completed prong of the statute because the target of his conduct was not a minor. Rather, his guilt or innocence must be determined " "as if the facts were *as he perceived them.*" ' " (*Reed, supra*, 53 Cal.App.4th at p. 396.) It follows that an attempt under section 236.1(c) does require as an element that the defendant intend to target a minor, at least where the victim is not in fact a minor. The People would have us reject factual impossibility as a defense to the crime of attempt under section 236.1(c) while simultaneously refusing to apply another established requirement of that doctrine. We reject the People's argument that Moses could be convicted not only in the absence of an actual minor victim, but also without intent to induce a minor victim.

In sum, section 236.1(c) operates as follows. To be convicted of the completed crime of *inducing* a minor to engage in a commercial sex act, the person induced must be a minor. To commit the crime of *attempting to induce* a minor, the defendant must act with the " 'specific intent to commit the [completed] crime' " (*Williams, supra*, 26 Cal.4th at p. 786), i.e., the intent to cause, induce, or persuade *a minor* to engage in a commercial sex act, at least when no actual minor victim is involved (see fn. 10, *ante*). The defendant must act with the additional intent to effect or maintain a violation of one of the offenses enumerated in the statute. If these elements are met, the fact that the particular target of his efforts is not actually a minor is not a

defense. Under both theories the defendant is guilty of "human trafficking" (§ 236.1(c)) and subject to the same punishment.[13]

### C. Remand Is Required

In the Court of Appeal, Moses argued that the instructions did not require the jury to find that he specifically intended to traffic a minor. Because the court reversed for lack of sufficient evidence of an actual minor victim, it did not reach this claim. The court did discuss the adequacy of the instructions in deciding that it could not reduce the offense from a violation of section 236.1(c) to an attempted violation of section 236.1(c), 664: "[T]he instructions provided by the trial court as to count 1 did not require the jury to determine whether Moses specifically intended to target a minor, as would be required if a violation of section 21a were a lesser included offense of section 236.1(c). Without assurance from the instructions given that the jury determined Moses specifically harbored the required intent for a violation of section 21a, we cannot reduce the section 236.1(c) conviction to that lesser attempt conviction." (*Moses, supra,* 38 Cal.App.5th at p. 767.)

The court's comments on the jury instructions were made in the context of its power to reduce the offense under sections 1181, subdivision 6 and 1260 upon a finding of evidentiary insufficiency. The court can only reduce an offense to a lesser offense that was necessarily found by the trier of fact. (*Bailey, supra,* 54 Cal.4th at p. 752.) Moses's claim of instructional error is governed by different standards. Specifically, the Court of Appeal did not address several counterarguments advanced by

---

[13] We disapprove *People v. Shields, supra,* 23 Cal.App.5th 1242, to the extent that it is inconsistent with this opinion.

the People, including that (1) Moses forfeited his challenge to the instruction by failing to object below; (2) the instructions, viewed as a whole and in light of the trial record, were not reasonably likely to mislead the jury about the required specific intent; and (3) any error was harmless beyond a reasonable doubt given the evidence and the jury's other findings. Accordingly, we remand the case to the Court of Appeal to address Moses's instructional challenge in the first instance.

## III. DISPOSITION

We reverse the judgment of the Court of Appeal and remand the case for further proceedings consistent with this opinion.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**HOCH, J.\***

———————————————

\*     Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Moses

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted**  XXX 38 Cal.App.5th 757
**Rehearing Granted**

_____

**Opinion No.** S258143
**Date Filed:**  December 28, 2020

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Julian W. Bailey

_____

**Counsel:**

Mark Alan Hart, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, Steve T. Oetting and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark Alan Hart
Attorney at Law
9420 Reseda Blvd.
Northridge, CA 91324
(818) 363-0419

Steve Oetting
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9207