Filed 11/22/22 P. v. Dumbrava CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. SEBASTIAN BOGDAN DUMBRAVA, Defendant and Appellant. | G060115 (Super. Ct. No. 20HF0081) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge. Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Appellant Sebastian Bogdan Dumbrava, after being detained at a mental health treatment facility, received notice he was prohibited from owning, possessing, controlling, receiving, or purchasing any firearm for a period of five years, absent court authorization. Firearm components and ammunition were subsequently found in his bedroom and he was convicted of two crimes: an attempt to possess a firearm and possession of ammunition. He was sentenced to serve consecutive prison terms totaling three years and eight months.

Dumbrava contends his judgment should be reversed because there was insufficient evidence about his detention, as required by the possession statutes he was convicted of violating, as well as insufficient evidence he attempted to possess a firearm. He also contends Penal Code section 654's prohibition of multiple punishments for the same act should be applied to stay his eight-month sentence for possession of ammunition by a prohibited person. We affirm the judgment.

FACTS

In 2019, law enforcement officers interviewed Dumbrava as a result of threatening comments he posted on social media and thereafter transported Dumbrava to UCI Medical Center (UCI). After he entered the hospital, an employee came out and requested the officers write an application for Dumbrava to be evaluated for a 72-hour hold as authorized by Welfare and Institutions Code section 5150.[1]

Dumbrava was placed on an involuntary hold, and then transferred to Canyon Ridge Hospital (Canyon Ridge), and involuntarily admitted to the hospital on the basis of being a danger to others. He was assessed and stayed at this facility until he was released two days later, when he was given a written advisement explaining he could not legally possess a firearm absent court authorization.

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

2

In 2020, after being alerted to Dumbrava's Twitter account which contained threats against the University of Irvine and campus police, law enforcement officers executed a search warrant on Dumbrava's bedroom. Inside a storage container, they found a locked duffel bag containing firearm components, a jig kit, tools necessary to build a civilian version of an assault rifle, 37 magazines for holding ammunition, and 1,199 rounds of ammunition. The search also yielded two nonfunctioning firearm receivers, a shipping label for one of them, and a box containing instructions on how to assemble a rifle.

Dumbrava was initially charged in an information on 25 felony counts: receipt of a large capacity magazine (Pen. Code, § 32310, subd. (a) [counts 1 through 22]); attempting to possess a firearm as a prohibited person (Pen. Code, § 8103, subd. (f)(1) & (i) [count 23]); and prohibited ownership of ammunition (Pen. Code, § 30305, subd. (a)(1) [count 24]). The trial court granted the defense's motion to dismiss counts 1 through 22.

A court trial was conducted on counts 23 and 24. The prosecution presented witnesses from Canyon Ridge, as well as a firearms expert who had executed the search warrant. The expert testified that Dumbrava had obtained all the necessary parts to build an assault rifle and that Dumbrava could assemble them into a functioning rifle in two to four hours.

The trial court convicted Dumbrava on both counts, and sentenced him to serve consecutive prison terms of three years on count 23 and eight months on count 24.

DISCUSSION

Dumbrava raises two claims on appeal. He contends there was insufficient evidence to convict him of either offense. Alternatively, he argues his eight-month sentence on count 24 for prohibited possession of ammunition should be stayed under Penal Code section 654.

*I.    Sufficiency of the Evidence*

Standard of Review

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one," where we """"must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.].)"""" (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.) We "'review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Story* (2009) 45 Cal.4th 1282, 1296; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319 ["the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"].)

Relevant Law

Section 8103 provides in relevant part that "[a] person who has been (i) taken into custody as provided in Section 5150 because that person is a danger to himself . . . or to others, (ii) assessed within the meaning of Section 5151, and (iii) admitted to a designated facility within the meaning of Sections 5151 and 5152 because that person is a danger to himself . . . or others, shall not own, possess, control, receive, or purchase, *or attempt to* own, possess, control, receive, or purchase, any firearm for a period of five years after the person is released from the facility." (*Id.*, subd. (f)(1)(A), italics added.)

Section 5150 provides in relevant part as follows: "When a person, as a result of a mental health disorder, is a danger to others, or to himself . . . , a [person authorized by the section] may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the

county for evaluation and treatment and approved by the State Department of Health Care Services. At a minimum, *assessment, as defined in Section 5150.4*, and evaluation, as defined in subdivision (a) of Section 5008, *shall be conducted and provided on an ongoing basis*." (*Id.*, subd. (a), italics added.)

Section 5150.4 states in its entirety that: "'Assessment' for the purposes of this article[, i.e., containing sections 5150 through 5155], means the determination of whether a person shall be evaluated and treated pursuant to Section 5150." Section 5151 states in relevant part as follows: "If the facility designated by the county for evaluation and treatment admits the person, it may detain the person for evaluation and treatment for a period not to exceed 72 hours. . . . [¶] Prior to admitting a person to the facility for treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or a designee shall assess the individual to determine the appropriateness of the involuntary detention." (*Id.*, subds. (a) & (b).)

Penal Code section 30305 provides in relevant part that "[n]o person prohibited from owning or possessing a firearm under . . . 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition." (Pen. Code, § 30305, subd. (a)(1).)


Application

The elements of section 8103 are supported by substantial evidence. The evidence at trial showed Dumbrava directly acted with the intent to own, possess, control, receive, or purchase a firearm within five years of being released from the second medical center. He was "taken into custody as provided in Section 5150 because" he was determined to be a danger to others; at a minimum, he was "assessed within the meaning of Section 5151" at Canyon Ridge; and he was "admitted to a designated facility within the meaning of Sections 5151 and 5152 because" he was determined to be a danger to others. (§ 8103, subd. (f)(1)(A)(i)-(iii).) Substantial evidence also supports a finding that

5

Dumbrava attempted to possess a firearm and possessed ammunition as proscribed by the statutes he was convicted of violating: section 8103 and Penal Code section 30305.

Dumbrava asserts two theories to argue the trial evidence was insufficient for his convictions. First, he argues that for both convictions there was insufficient evidence he was "assessed within the meaning of Section 5151," as required by section 8103, subdivision (f)(1)(A)(ii). The argument rests on the premise that the first facility where Dumbrava was detained—the hospital—was the only location where an assessment could have been conducted. This premise is contradicted by the statutory scheme of the Lanterman-Petris-Short Act (§ 5000 et seq.) (the Act), the legislation that contains section 5150 and governs its framework.

The purpose of an assessment "within the meaning of section 5151" is "to determine the appropriateness of [an] involuntary detention" authorized by the Act. (§ 5151, subdivision (b).) The legislation provides that assessments for a detention be "conducted and provided on an ongoing basis," as circumstances require. (§ 5151, subd. (a)). The Act contemplates that an individual may be treated at more than one facility within the authorized 72-hour detention, which is what happened in this case. (See § 5150, subd. (i)(1) [required information for detained person includes the proposition that the person "may request to be evaluated or treated at a facility of [his or her] choice"]; see § 5008, subd. (n) [defining meaning of "'facility designated by the county for evaluation and treatment'"].)

Dumbrava's detention at Canyon Ridge was subject to section 5151's assessment requirement. (§ 5151, subd. (b) ["Prior to admitting a person to the facility for treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or a designee shall assess the individual to determine the appropriateness of the involuntary detention"].) The trial evidence included direct testimony by a nurse who worked at the facility, who testified that Dumbrava was assessed at the beginning of his detention there. Accordingly, although no direct evidence was presented at trial on

6

whether Dumbrava was assessed at UCI, his assessment at this first facility is of no moment because there was substantial evidence that an assessment required by section 8103, subdivision (f)(1)(A)(ii), occurred at the second facility, namely Canyon Ridge.

Second, Dumbrava contends his conviction for violating section 8103 should be reversed because there was insufficient evidence he attempted to possess a firearm. Generally, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (Pen. Code, § 21a; see *People v. Moses* (2020) 10 Cal.5th 893, 906.) Dumbrava's claim of insufficient evidence focuses on the second element—whether there was a direct but ineffectual act that went beyond mere preparation. Here, the argument is made that Dumbrava's conviction should be reversed because the evidence shows only acts of preparation. We disagree.

Our Supreme Court has explained: "'[b]etween preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made.' [Citation.] '"[I]t is sufficient if it is the first or some subsequent act directed towards that end after the preparations are made.'" [Citation.] (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8.)

"Although a definitive test has proved elusive, we have long recognized that '[w]henever the design of a person to commit crime is clearly shown, slight acts in furtherance of the design will constitute an attempt.' [Citations.]" (*People v. Superior Court* (*Decker*), *supra*, 41 Cal.4th at p. 8.) This is known as the "slight-acts rule." (*Id.* at p. 10.) In *Decker*, our Supreme Court stated: "The purpose of requiring an overt act is that until such act occurs, one is uncertain whether the intended design will be carried out. When, by reason of the defendant's conduct, the situation is 'without any

7

equivocality,' and it appears the design will be carried out if not interrupted, the defendant's conduct satisfies the test for an overt act. [Citations.]" (*Id.* at pp. 13-14.)

Here, Dumbrava's intent was clear—to possess a functioning assault-style rifle and he had taken several steps in furtherance of his plan. His actions went beyond mere preparation as he had obtained all of the firearm's components, procured information on how to assemble the firearm, gathered the tools he needed for the assembly, acquired 37 magazines to load ammunition into the firearm, and amassed 1,199 rounds of ammunition. Considering all of these actions together, we have no problem concluding there was sufficient evidence Dumbrava's actions went beyond mere preparation and are sufficient to constitute an attempt.

In *People v. Nguyen* (2013) 212 Cal.App.4th 1311, we concluded the defendant, who had acquired the parts for an assault firearm, was properly convicted of the attempted possession of an assault weapon because he had gone beyond mere preparation by bending the flat receiver so the firearm could be assembled. (*Id.* at p. 1323.) Here, we find substantial evidence Dumbrava went beyond mere preparation by gathering the tools he needed to assemble the firearm and by obtaining substantial numbers of magazine and rounds of ammunition; this conduct satisfies the overt act requirement. It is for this reason we find *Nguyen* is consistent with our analysis here.

Dumbrava contends the evidence was insufficient because he had not drilled the receiver and the firearm remained unassembled. He asserts that even if he had started to put the rifle together, he had two to four hours of work to complete before he had a functioning rifle. This argument misapprehends the difference between the completed crime of possession of a firearm and an attempt to possess a firearm. Within two to four hours of starting the assembly, Dumbrava would have had an operable firearm and be guilty of possession of a firearm, not attempted possession of a firearm.

Given the record, Dumbrava's position on the sufficiency of the trial evidence ignores the plain statutory language of section 8103, which shows the

8

Legislature elected to specify that *either* an attempted possession or successful possession of a firearm would equally violate the law. We decline to nullify the statutory phrase "attempt to" explicitly included in the conduct proscribed by section 8103.

We find poignant the Supreme Court's discussion of the law of attempts: "'"'One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime." [Citation.] Accordingly, the requisite overt act "need not be the last proximate or ultimate step towards commission of the substantive crime . . . . [¶] Applying criminal culpability to acts directly moving toward commission of crime . . . is an obvious safeguard to society because it makes it unnecessary for police to wait before intervening until the actor has done the substantive evil sought to be prevented. It allows such criminal conduct to be stopped or intercepted when it becomes clear what the actor's intention is and when the acts done show that the perpetrator is actually putting his plan into action." [Citations.]'" (*People v. Moses, supra*, 10 Cal.5th at p. 899.)

Here, Dumbrava's intent was clear and he had started putting his plan into action by acquiring the parts he needed to have a functioning assault-style rifle, obtaining the tools to complete the assembly, and gathering the magazines and ammunition to use once the assembly was complete. It was unnecessary for police to wait until he had completed the assembly before intervening.

II. *Sentencing*

Dumbrava contends we should apply Penal Code section 654 to stay execution of his consecutive eight-month sentence for possession of ammunition on Count 24. The statute provides in relevant part that: "An act or omission that is punishable in different ways by different provisions of law may be punished under either

9

of such provisions, but in no case shall the act or omission be punished under more than one provision." (*Id.*, subd. (a).)

Given that Dumbrava's conduct underlying counts 23 and 24 did not occur through a single physical act, we consider whether Dumbrava's "course of criminal conduct is divisible"—whether it reflected a single intent and objective for the purpose of Penal Code section 654 analysis. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

Substantial evidence supports the trial court's implied findings that Dumbrava had maintained separate intents and objectives when he committed the acts underlying his convictions for counts 23 and 24. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 ["Whether [Penal Code] section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination"].) Dumbrava attempted to possess a firearm and did possess over 1,100 rounds of ammunition, which were not loaded into a firearm. Presuming all facts the court could reasonably have deduced, the record supports a finding that Dumbrava may have been planning multiple attacks on multiple targets. Dumbrava relies on cases that hold where a firearm is found loaded with ammunition, the possession of both cannot justify the imposition of two punishments. (See, e.g., *People v. Lopez* (2004) 119 Cal.App.4th 132, 137-138.) Those cases are inapplicable here because the ammunition Dumbrava possessed was not loaded into a firearm.

10

## DISPOSITION

The judgment is affirmed.


MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.