Filed 8/22/24  P. v. Miravete CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081467 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE407612) |
| RAFAEL ZAPATA MIRAVETE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall Einhorn and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

High school English teacher Rafael Zapata Miravete asked a 14-year-old student to (1) send him provocative photographs of herself as part of an extra-credit writing project and (2) allow him to subscribe to a fictional social

media account to see "daring" videos and "mostly naked" photographs of her. A jury convicted Miravete of contacting a minor with intent to commit a sexual offense in violation of Penal Code section 288.3 and of molesting or annoying a child in violation of section 647.6, subdivision (a)(1).

Miravete contends: (1) the trial court erred in determining a violation of section 288.3 is a straight felony rather than a "wobbler" offense reducible to a misdemeanor, (2) the court erred in instructing the jury it could find him guilty of violating section 288.3 for attempting to violate either or both of sections 311.11 and 311.4, (3) there was insufficient evidence to support his section 288.3 conviction based on an intention to violate either section 311.11 or section 311.4, and (4) the court erred in overruling a defense objection to the prosecutor's challenge for cause to two potential jurors who indicated they were not sure they could follow the law. We disagree with each contention.

First, the plain language of section 288.3 indicates a violation of section 288.3 is a felony, not a wobbler. This interpretation is bolstered by the text of Proposition 83, by which the voters adopted section 288.3, and the relevant ballot materials. Second, even if the court erred in instructing the jury it could find Miravete guilty of violating section 288.3 for attempting to violate either target offense, any error was harmless because Miravete cannot establish prejudice based on current or possible future punishment from not knowing which target offense(s) the jury found he intended to violate. Third, the record contains substantial evidence supporting Miravete's section 288.3 conviction based on either of the target offenses. Fourth, given the trial court's assessment of the equivocal and nonverbal responses of jurors during voir dire, it did not abuse its discretion in dismissing two jurors for cause over a defense objection. And, any error was harmless, as Miravete was not

2

entitled to any given juror and the prosecution gained no unfair advantage since neither side exercised all its peremptory strikes.

We thus affirm the judgment.

## I.

## A.

In January 2021, Miravete asked Jane Doe, a freshman in his English as a Second Language class, to stay after class to discuss her failing grade. He said she could earn extra credit by writing an essay about what she wanted to be when she was older. Jane wanted to write about a celebrity model who inspired her to pursue modeling, but Miravete told her to write an "inspirational" essay about herself with photographs. At Miravete's request, Jane showed him several photographs of herself on her social media account. Over the next month and a half, Miravete, ostensibly as part of the extra-credit assignment, increasingly pressured Jane for sexually provocative media of herself.

Initially, at Miravete's request, Jane sent two photographs. He later requested a specific video and photograph from her social media account. She reluctantly granted Miravete's request to follow her on social media.

Miravete identified two photographs from her social media account for inclusion in her project. To improve her grade, he said she needed to include the photographs or take new photographs on her phone that she could show him personally so she did not have to send them.

Later, after overhearing Jane and her friends joke about creating an "OnlyFans" account to make money, Miravete asked if Jane had created her account and if he could subscribe. When she said her nonexistent account contained photographs of herself without clothes, Miravete said, "Lemme subscribe and we can work out deals that work out in your favor."

3

Late one Saturday night, when Miravete again asked for access to Jane's account, she asked if he would feel "weird seeing a 14 year old mostly naked?" He confirmed his understanding that OnlyFans contained pornographic content and that he was "[n]ot asking for free" and knew "it's got it's dues."

B.

Jane told a relative about her exchanges with Miravete. She then told her school's principal and an assistant principal. The assistant principal took screen shots of the messages on Jane's phone, and Jane forwarded the emails to the principal.

In a conversation with the principal, Miravete acknowledged communicating with Jane about a project, said the exchange started innocently, and admitted he could see how the communications could be misconstrued. He appeared regretful and said he "fucked up."

The principal testified that (1) if a teacher learned a student may be posting nude photographs of herself to make money, the teacher had an obligation to report it to the principal and child protective services for the student's safety, and (2) teachers are discouraged from directly communicating with students through social media.

II.

Miravete raises four contentions on appeal.

A.

Count 1 of the information charged Miravete with a felony violation of section 288.3, subdivision (a), for unlawfully contacting and communicating with a minor with the intent to commit a sexual offense specified in sections 311.11 (possessing child pornography) and 311.4 (inducing a minor to pose for or create child pornography). Miravete first contends

4

section 288.3 adopts the punishment scheme for the enumerated offenses, some of which are wobblers chargeable and punishable as either felonies or misdemeanors.  (*People v. Park* (2013) 56 Cal.4th 782, 789.)  Since possession of child pornography in violation of section 311.11 is a wobbler offense, he argues the trial court should have reduced count 1 to a misdemeanor.

The trial court disagreed with Miravete's interpretation and denied his requests to reduce count 1 to a misdemeanor.  We also disagree.

1.

We independently review issues regarding statutory interpretation.  In doing so, we begin with the plain language of the statute, then look to the statute's purpose, legislative history, public policy, and statutory scheme to "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."  (*People v. Barba* (2012) 211 Cal.App.4th 214, 222 [cleaned up].)  We apply the same principles when interpreting a voter initiative.  (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)

A crime punishable "by imprisonment in the state prison" is a felony. (§ 17, subd. (a).)  "Every other crime or public offense is a misdemeanor." (*Ibid.*)  The determination of the punishment for a crime is within the domain of the Legislature or electorate, who are best positioned to evaluate the gravity of and harm caused by a crime and fix an appropriate penalty. (*People v. Moses* (2020) 10 Cal.5th 893, 911; *People v. Mauch* (2008) 163 Cal.App.4th 669, 674.)  A court has no power to reduce a felony to a misdemeanor absent statutory authorization.

Section 288.3(a) states: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who

5

knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section . . . 311.4 or 311.11 . . . involving the minor shall be punished *by imprisonment in the state prison for the term prescribed* for an attempt to commit the intended offense." (Italics added.)

Section 288.3 was adopted by voters as part of the Sexual Predator Punishment and Control Act: Jessica's Law (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006), § 6; Proposition 83). One of its stated purposes was to protect children from sexual predators who victimize children using the Internet. (*People v. Korwin* (2019) 36 Cal.App.5th 682, 689–690 (*Korwin*).) The findings and declarations passed by voters as part of Proposition 83 explained that "[c]hild pornography exploits children and robs them of their innocence" and the Internet's prevalence "ushered in an era of increased risk to our children by predators using this technology as a tool to lure children . . . into dangerous situations. Therefore, to reflect society's disapproval of this type of activity, adequate penalties must be enacted to ensure predators cannot escape prosecution." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2, subds. (c) & (d), p. 127.)

The argument provided to voters in favor of the measure stated it would require "MANDATORY MINIMUM PRISON SENTENCES for dangerous child molesters and sex criminals." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) argument in favor of Prop. 83, p. 46.) It also stated the new law would "[a]llow prosecutors to charge criminals who possess *child pornography with a felony*. (Current law treats child porn like trespassing or driving on a suspended license!)" (*Ibid.*)

2.

The plain language of section 288.3, along with the text of Proposition 83 and the accompanying ballot materials, show the voters meant

6

to impose felony punishment on offenders who target and communicate with minors with the intent to commit sexual crimes, including an attempt to possess child pornography or to encourage a child to create pornography.

The statutory language does not, as Miravete claims, adopt the punishment scheme of the intended offense.  Had the electorate wanted to do so, it could have said every violation "shall be punished *as prescribed* for an attempt to commit the intended offense."  Instead, section 288.3(a) requires any violation to "be punished *by imprisonment in state prison* for the term prescribed for an attempt to commit the intended offense."  (Italics added.)  As one judicial officer stated in the proceedings below, Miravete's contrary position would "render those words completely meaningless.  There would be no reason to state that state imprisonment is the sentence, if, in fact, it was irrelevant."  Because section 288.3 specifies that any term of punishment shall be served in state prison, its violation is a felony.  (*People v. Terry* (1996) 47 Cal.App.4th 329, 331 [punishment specified for crime is the test unless statute expressly characterizes crime as felony or misdemeanor].)

This interpretation is bolstered by the electorate's determination that felony punishment was appropriate for violations of section 288.3(a), the declared purpose of which was to "'strengthen and improve the laws that punish and control sexual offenders.'"  (*People v. Medelez* (2016) 2 Cal.App.5th 659, 663.)  It is inconsequential that some crimes enumerated in 288.3 could be punished as a misdemeanor if a defendant completed the target offense outside the context of contacting or communicating with a minor for such a purpose.  To prevent predators from placing children in dangerous situations, the electorate determined the crime of contacting or communicating with the minor with an intention to commit an enumerated sexual offense should be punished as a felony.  The "rule of lenity," which

requires doubt as to the meaning of a statute to be resolved in favor of a defendant, does not apply when, as here, a court can fairly discern a contrary intent. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1271.)

As a violation of section 288.3(a) is a felony, the trial court had no authority to reduce count 1 to a misdemeanor and did not err in denying Miravete's requests to do so.

B.

Second, Miravete contends the court improperly instructed the jury they could convict him for violating section 288.3 based on an intent to violate section 311.11, section 311.4, or both. He argues only one target offense should be charged per count alleging a section 288.3 violation, because the statute disjunctively enumerates 15 different target offenses that may serve as the specific intent element. Miravete does not challenge how the case was charged. Instead, he focuses his challenge on the court's response to a jury question, which he contends was prejudicial given the verdict form's failure to specify which target crime the jury found he intended to violate. We conclude that, even if the court erred, Miravete has not shown prejudicial error.

1.

The court instructed the jury that Miravete was charged in count 1 "with contacting a minor with the intent to commit a violation of Penal Code section 311.11 and 311.4 in violation of . . . section 288.3(a)." (CALCRIM No. 1124.) It also instructed the jury, "The specific intent required for the crime of communicating with a minor with the intent to commit a certain crime is the intent to commit a violation of Penal Code section 311.11 or 311.4." (CALCRIM No. 251.) The court gave separate instructions on the requirements to determine whether Miravete intended to violate section 311.11 or section 311.4. (CALCRIM Nos. 1145, 1144.) Finally, the

8

court instructed the jury it had to agree on which act Miravete committed even though the People presented evidence of more than one act to prove the offense.  (CALCRIM No. 3500.)

In closing statements, the prosecutor argued the jury could find Miravete contacted and communicated with Jane with an intent to violate either or both of sections 311.11 and 311.4.  The prosecutor explained the jury was required to reach a unanimous decision as to the crime or crimes Miravete intended to commit when he communicated with Jane: "All 12 of you can say, you know what, it was only 311.11.  All 12 of you can say it's 311.4.  All 12 of you can say it's both.  Okay.  So half of you can't say it's 311.11.  And half of you can't say its 311.4.  You have to have a consensus."  The prosecutor argued there was evidence to support a finding Miravete intended to violate both 311.11 and 311.4.

Shortly after the jury started deliberating, it sent a note asking for clarification: "Prosecutor said we need to establish 311.11 OR 311.4 but the law states we need to establish 311.11 AND 311.4.  Which is correct?"

In discussing the question, defense counsel argued the jury needed to find a violation of both sections, because that was how count 1 was charged in the information and stated in the instructions.  The prosecutor disagreed, arguing the jury could find Miravete intended to violate either statute or both, so long as the jury reached a unanimous decision about which crime(s) he intended to commit.

After considering the arguments, the court provided the following response: "The People are required to establish beyond a reasonable doubt that when the defendant communicated with the victim, he intended to commit a violation of Penal Code Section 311.11 or 311.4, and the jury must

9

unanimously agree that the defendant had the intent to violate either one or both of those statutes."

2.

A trial court has a duty to assist the jury in understanding the legal principles it is asked to apply. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).) If the original jury instructions are full and complete and a jury seeks additional information about a point of law during deliberation, the court has discretion under section 1138 to determine what additional explanation is sufficient. (*People v. Smithey* (1999) 20 Cal.4th 936, 985.) Even if the court violates section 1138 by failing to offer a sufficient explanation, reversal is not warranted "unless prejudice is shown." (*People v. Jenkins* (2000) 22 Cal.4th 900, 1027; *Beardslee,* at p. 97.)

3.

At oral argument, the People recognized the better practice for a verdict regarding a violation of section 288.3 would be to have the jury find a special verdict as to which target crime the defendant intended to commit because there will be circumstances where punishment could be different for different target offenses. We need not decide how verdict forms should best be crafted for alternate target offenses or whether it would be better practice to separately charge section 288.3 violations based on alternate target offenses because Miravete has not established prejudicial error based on the facts of this case.

Since the court gave the unanimity instruction, we must presume the jury understood and followed the law by unanimously finding Miravete contacted Jane with the intent to violate either section 311.11 or section 311.4, or both. (*People v. Gray* (2005) 37 Cal.4th 168, 231.) And, as discussed above, a violation of section 288.3 is a felony regardless of the

10

target crime; only the sentence's term may change based on the target offense.

Here, Miravete agreed the sentence is the same whether the jury found he intended to violate section 311.11 or 311.4.[1]  Miravete also acknowledged that because section 288.3(c) provides for enhanced punishment for *any* subsequent violations of section 288.3, "knowing which enumerated offense was violated is not vital [for] this purpose."

Miravete's counsel agreed at oral argument that, under the facts of this case, it was not reasonably possible that a jury could find Miravete intended to violate section 311.4, but not 311.11 or vice versa.  Nevertheless, the People sought punishment for only one violation of section 288.3.  The court suspended imposition of a sentence and granted Miravete probation with 180 days in local custody.

At oral argument, Miravete also pointed out that section 290 treats registration requirements for violations of section 288.3 differently based on the intended offense.  Section 290(d)(3)(xi) generally requires a defendant convicted of violating section 288.3 to register as a sex offender for life, but it has some exceptions based on the target offense.  However, none of the exceptions are applicable here.

Finally, Miravete argued a defendant convicted of violating section 288.3 should know which target offense the jury found the defendant attempted to violate because some, but not all, target offenses are considered

---

[1]    Because a violation of section 288.3 is a felony, the People's position is that a sentencing court should look to the felony punishment of any intended crime that is a wobbler; the statute does not permit imposing a misdemeanor term with a requirement to serve that term in state prison.  Considering Miravete's concession that the sentence is the same for both target offenses alleged here, we do not decide this issue.

crimes of moral turpitude that could lead to adverse immigration consequences, including removal. (See *Syed v. Barr* (2020) 969 F.3d 1012, 1017–1020.) But nothing in the record suggests Miravete is potentially subject to removal. Indeed, the probation report indicates Miravete was born in the United States. We will not issue an advisory opinion on a proposition of law that is not before us. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998; *In re William M.* (1970) 3 Cal.3d 16, 23, fn. 14.)

On these facts, Miravete cannot establish prejudice based on current or possible future punishment. Any error in responding to the jury question was harmless under any standard; Miravete thus is entitled to no relief. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 26.)

## C.

Third, Miravete argues substantial evidence does not support his conviction under section 288.3 based on either section 311.11 or 311.4 because there was insufficient evidence the images Miravete intended to possess or induce Jane to pose for "constituted 'engaging in or simulating sexual conduct.'" We disagree.

"As with all sufficiency claims, we presume every fact in support of the judgment that can be reasonably deduced from the evidence. If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Vargas* (2020) 9 Cal.5th 793, 822 [cleaned up].) We look for substantial evidence—evidence that is "reasonable, credible[,] and of solid value"—and do not substitute our own factual determinations for the factfinder's. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.)

1.

After suggesting the extra-credit project in January 2021, Miravete asked Jane to take photographs for the project and email them to him. Jane sent two photographs. Miravete asked if she could send more from her social media account, referring specifically to a video and a photograph "that [she] cut off from the bottom" as "awesome."

Miravete asked if Jane had a version of the photograph "that's not cutoff to see?" He clarified she was wearing underwear in the photograph he meant. When she sent a photograph showing her in a cropped top and the upper portion of a bikini bottom, Miravete confirmed it was the photograph. Jane said that was the only version she had. Miravete then asked for Jane's social media account name and sent a request to follow her. Feeling pressured, she confirmed his request.

Miravete sent Jane messages through her social media account with two photographs. As to the one showing Jane's lips puckered and the top of her breasts, he wrote, "This one for obvious reasons." As to the one showing Jane in a short top with a bare midriff and her underwear showing above her pants, he wrote, "And that one for the clothing."

Jane sent Miravete a draft of her essay. He responded it was good and they could discuss perfecting her writing in class, but her grade was "still a 'C.' Unless you want to add a suggested pic." When she asked which photograph, he said, "It was a combination of two pictures. I think the message is still on the app." He added, "There could be another option for a B. [¶] Even an A." She could take photographs and show them to him from her phone. He explained, "That way only you have them." Otherwise, they could leave it "[a]t a C."

13

Jane asked "if there's any other way," to which Miravete responded the only options were: "1- do the missing assignments. [¶] 2- share the portfolio with the poses [¶] 3- you tell me what you have in mind." Jane eventually said she was fine with a C. Miravete said to let him know if she changed her mind. He confirmed the offer the following day.

In February, Miravete sent Jane a social media message saying, "[t]hose pics are off the charts" and reminded her to correct "the project."

During a class break the next day, Jane and some classmates discussed how celebrities were making money using a new social media application called OnlyFans, where people paid a subscription to watch video blogs, photographs, or videos, often nude or sexual in nature. Jane and her friends joked about creating an account to make money while Miravete was nearby.

After class, Miravete sent Jane a message in Spanish asking about "Friends Only," which she understood to mean OnlyFans.[2] He then asked in English if she had worked on her project and told her to stop by his class because she was "failing again." Uncomfortable being alone with him, she said she could not.

In early March, Miravete sent Jane a message asking if she had made her "fans only page already" and "[w]hen would you [share it]?" When Jane confirmed she would let him subscribe, Miravete asked, "Is the content really worth it?" She responded, "Yea I mean is me with out clothes." Miravete said, "Lemme subscribe and we can work out deals that work out in your favor. [¶] Always." Jane asked, "Like[?]" He said, "You set the standards."

---

[2]    In his defense, Miravete called the investigating detective as a witness who said a social media application called "Friends Only" exists. It was established in and is primarily used in Australia to connect adults. It does not appear to be used for nefarious purposes. The detective was unaware of the site before this case.

The following day, Jane kept to herself during Miravete's class. Miravete sent Jane a message after class saying it was "awkward." He then asked, "Am I gonna get that FO?"

The next night, a Saturday, Miravete sent Jane a late-night message saying, "FO sis." Jane asked, "You don't feel weird seeing a 14 year old mostly naked"? Miravete responded, "Mostly naked, but not all naked. [¶] But now that you put it that way[.]" When Jane told Miravete that OnlyFans was a pornographic website, he said he did not "need an explanation." He said he was "[n]ot asking for free. [¶] I know it's got it's dues. [¶] Life's not free. I get it." When she said, "Exactly," Miravete said, "Cut to the chase. [¶] Business is business." The following Monday, Miravete told Jane she still had not finished her project.

2.

Section 311.11(a), prohibits possession or control of any matter, including photographs, depicting "a person under 18 years of age personally engaging in or simulating sexual conduct."

Section 311.4(b), prohibits a person from persuading, inducing, or coercing a minor under 18 years of age to "engage in either posing or modeling . . . for purposes of preparing any representation of information . . . including, but not limited to, any film, filmstrip, photograph[, or] . . . data storage media . . . that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years[.]"

Section 311.4(d), defines "sexual conduct" to include "exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer." A factfinder may consider a number of factors to determine if a photograph meets this definition, including whether: "the focal point is on the

15

child's genitalia or pubic area"; "the setting is sexually suggestive"; "the child is in an unnatural pose" or wearing "inappropriate attire" for the child's age; "the child is fully or partially clothed, or nude"; "the child's conduct suggests sexual coyness or a willingness to engage in sexual activity"; and "the conduct is intended or designed to elicit a sexual response in the viewer." (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1755.) These are factors, not elements, and "the determination must be made based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age." (*Ibid.*)

3.

In this case, the evidence supports a finding that Miravete contacted and communicated with Jane with the intention to possess child pornography (§ 311.11(a)), to induce her to pose for or create child pornography (§ 311.4(b)), or both.

The acts specifically alleged for count 1 involved Miravete sending Jane a message on a Saturday night asking for access to her account on OnlyFans. When Jane asked if he would feel weird seeing a 14-year-old "mostly naked," he responded, "not all naked. [¶] But now that you put it that way[.]" Miravete said he understood OnlyFans was like a pornographic site; he was not "asking for free" and knew the site had "dues."

This exchange must be viewed in the context of the communications Miravete had with Jane over the prior month and a half in which he asked for access to a social media account where he could view and save photographs. Miravete was not satisfied with the photographs Jane initially shared showing her face or modest clothing. He pressed her for a version of a photograph showing a bikini bottom that was not "cut off," evidencing his interest in possessing photographs of Jane's genital or pubic area.

16

Miravete also sent Jane two photographs from her social media account showing her in sexually suggestive poses or implying sexual coyness. When Jane turned in the assignment without those photographs, Miravete said it was "still a C," but she could improve her grade if she included them. He also said, more than once, that she could improve her grade further if she would take additional photographs and show them to him from her phone so she would not "have to worry about sending pics" and only she would have them. A reasonable inference is that he wanted more sexually suggestive photographs.

Miravete continued to follow Jane on social media and commented on photographs she posted as "off the charts" and encouraging her to "correct the project," inferring she should also include those photographs.

After hearing Jane and her classmates discuss OnlyFans, Miravete sent a message asking if it included daring videos and asking what the point was when she said no. Later, he sent Jane a late-night message asking if she had made an OnlyFans page and whether she would let him "subscribe." He asked if the content was "worth it." When she said it was her "with out clothes," he propositioned her: "Lemme subscribe and we can work out deals that work out in your favor."

Miravete continued to press Jane for access, culminating in the exchange in which he said he wanted access to the site to see her "mostly naked" and understood it was not "free." He understood the nature of the site, including the sharing of pornographic material, and wanted to see photographs of Jane within this context, meeting the setting factor in *Kongs*.

We are not persuaded by Miravete's contention that the jury could not determine whether the videos and photographs he wanted to access met the *Kongs* factors because Jane did not actually have an OnlyFans account.

17

Under section 288.3(a), communication with a minor for the intended purpose to commit an enumerated crime is a completed crime. The target offense need not be completed. "Intent is in the mind; it is not the external realities to which intention refers. The fact that defendant was mistaken regarding the external realities did not alter his intention, but simply made it impossible to effectuate it." (*Korwin,* 36 Cal.App.5th at p. 688 [cleaned up].)

The record shows Miravete contacted and communicated with Jane, a minor, with the intent to possess "daring" videos and "mostly naked" photographs of her, including her genital or pubic area, for the purpose of sexual stimulation in violation of section 311.11. There was no legitimate reason to ask for such media. The fact such content did not exist on a fictional OnlyFans site does not alter Miravete's intention. This alone is sufficient to support his conviction.

Additionally, Miravete's repeated inquiries as to whether Jane had made an OnlyFans page, along with his requests to "subscribe" for "daring" videos and "mostly naked" photographs, show he *also* was communicating with Jane with an intent to persuade, induce, or coerce a minor to pose for or prepare images and videos involving sexual conduct in violation of section 311.4. Indeed, Miravete asked if the content was "really worth" subscribing. The intention and expectation of obtaining subscription access to Jane's fictional OnlyFans account undoubtedly was to allow Miravete to access not only any existing content, but also content he expected her to create in exchange for "deals that work out in [her] favor," as supported by his previous requests. Miravete previously tried to induce Jane to pose for and create photographs of herself and show them to him in person in exchange for a higher grade. The implication is that such photographs would be more revealing or provocative than those he had already seen because she

18

would not want to send them electronically. Thus, the record also contains substantial evidence supporting Miravete's conviction for communicating with Jane with the intent to induce her to create child pornography in violation of section 311.4.

Substantial evidence supports Miravete's section 288.3 conviction.

## D.

Finally, Miravete contends the court erred in excusing two jurors for cause over his objection. We conclude the court did not abuse its discretion and any error was harmless.

## 1.

Toward the end of voir dire, the prosecutor asked the jurors to guarantee they would follow the law even if they disagreed with it. He asked them to raise a hand if they thought they might have an issue doing so.

Juror 36 asked how they would know the law. The prosecutor explained, "It takes a little bit of faith, right, that whatever the law that the judge reads to you that you believe in the rule of law, and that you're going to follow even if you might personally disagree with it." The prosecutor then asked, "Are you capable . . . of doing that?" The prosecutor said, "It's okay if you're not. I could see its hard." Juror 36 responded, "Yeah, it's hard."

The prosecutor asked if anyone had similar feelings. Juror 8 responded, "I understand his point. Like you would have [to] tell me what we're talking about." The prosecutor explained that the jurors listen to the facts, the court reads the law, and then the jurors apply the facts to the law. The prosecutor asked Juror 8, "do you think that will be an issue?" Juror 8 responded, "I think it's fine. I agree with his point," to which the prosecutor replied, "I know you say you think it's fine, but we need to know." Juror 8 said, "I'm telling you. I can't know until you tell me."

19

The following day, in an unreported sidebar discussion, the court excused two jurors for cause. The court and counsel later made a record that the court granted the challenges for cause over a defense objection. The court said the prosecutor asked the jurors if they could follow the law and the instructions if they did not agree with them, and "[o]ne said I might not be able to and the other one said, no, I couldn't." Defense counsel argued they qualified their answers, saying they had not heard the instructions. The court, however, reiterated that one juror said, "[N]o, I could not," and the other said, "I don't think I could, but I'm not sure."

2.

The trial court has broad discretion to consider a challenge for cause and exclude jurors if their views would prevent them from acting impartially (*People v. Kelly* (2007) 42 Cal.4th 763, 777 (*Kelly*)) or prevent or impair the performance of their duties in accordance with their oath and the court's instructions (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1006). "Because this determination involves an assessment of the juror's demeanor and credibility, it is one 'peculiarly within a trial judge's province.'" (*Id.* at pp. 1006–1007.) We thus defer to the trial court's assessment, and its ruling is binding on a reviewing court if the juror's responses are conflicting or equivocal. (*Id.* at p. 1007.) Generally, even an erroneous exclusion of a juror for cause is not grounds for overturning a judgment, as a defendant has a right to "qualified and competent" jurors, but not "any particular juror." (*Kelly*, at p. 777.)

3.

On this record, we cannot say the court abused its discretion. The cold record does not capture the jurors' demeanor after being asked whether they could follow the law even if they disagreed with it. For example, before

20

Juror 36 answered the question, the prosecutor said, "It's okay if you're not. I could see it's hard." This suggests Juror 36 may have hesitated or given some visual cue before admitting, "Yeah, it's hard."

The court was in the best position to observe the jurors' demeanor. Based on its first-hand assessment, the court may have been "left with the 'definite impression'" that the jurors could not impartially apply the law even though they had not expressed their views "with absolute clarity." (*People v. DePriest* (2007) 42 Cal.4th 1, 21.) We are bound by this assessment.

Additionally, even were the jurors improperly excluded, Miravete cannot establish prejudice. He acknowledges a defendant is not entitled to any particular juror, only a jury composed of qualified and competent individuals. (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 148.) He claims without explanation, however, that he was prejudiced because the jury was *not* composed of qualified and competent individuals, given the person who was seated in place of Juror 8 left during deliberations and was replaced with an alternate. We do not agree.

The person seated as Juror 8 informed the court and counsel during voir dire that she was interviewing for a job. The court asked her to rearrange an interview but said they would replace her if she could not do so. About a week later, during deliberations, seated Juror 8 asked to speak to the judge. At the clerk's instruction, the juror submitted a note saying she needed to leave because she had an interview that afternoon. The juror told the clerk that she could return to deliberate the following afternoon. After discussion, however, the court substituted an alternate for Juror 8.

If defense counsel thought seated Juror 8 was not competent or qualified to serve on the jury, he could have exercised a peremptory challenge. He did not do so. Indeed, defense counsel objected to replacing

Juror 8 when she left the deliberations and asked to delay the trial to permit her to continue to participate, suggesting defense counsel did *not* view this juror as incompetent or unqualified.

Further, we see no prejudice in how the jury was seated based on the exclusion of the jurors for cause rather than by peremptory challenge. Neither side exercised all its peremptory challenges. (Code Civ. Proc., § 231, subd. (a).) Similarly, neither side exhausted its additional peremptory challenges for alternates. (Pen. Code, § 1089.) Therefore, the prosecution obtained no advantage by excluding the jurors for cause.

We therefore conclude there is no basis to reverse the judgment based on the formation of the jury.

III.

We affirm the judgment.

CASTILLO, J.

WE CONCUR:


BUCHANAN, Acting P. J.


KELETY, J.

22