Filed 4/2/26  P. v. Berry CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARRONE SHERRICK BERRY,<br><br>Defendant and Appellant. | F088801<br><br>(Super. Ct. No. 23CM1631)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

Pursuant to California Rules of Court, rule 8.264(c), it is ordered that the opinion filed herein on March 12, 2026, be modified in the following particulars:

1.  On page 4, in the second full paragraph, the last sentence beginning with "Sarah" and ending with "several days" is deleted, and the following sentence is inserted in its place:

    Sarah and defendant's communications occurred over a couple of days.

2.  On page 5, in the second full paragraph, after the sentence ending "they were talking about," add the following sentence:

    Defendant denied being the person who sent the messages through the social media website.

3.  On page 16, under the subheading "**C.  *Analysis***," the first full paragraph beginning with "Defendant's conviction" and ending with "a commercial sex act" is deleted and the following paragraph is inserted in its place:

Defendant's conviction for human trafficking of a minor for a commercial sex act (§ 236.1, subd. (c)) is supported by substantial evidence. As we stated above, an attempted inducement of a minor suffices for a conviction under the statute. (*Moses*, *supra*, 10 Cal.5th at p. 913.) Defendant's conduct here was sufficient to constitute an attempt to induce Sarah to engage in a commercial sex act. (See *id*. at pp. 908–909, 913; see also *People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 8 [" '[w]henever the design of a person to commit crime is clearly shown, slight acts in furtherance of the design will constitute an attempt' "].) Defendant's conduct of using social media to contact Sarah, of asking her—after learning she was working as a prostitute—what her "situation was," of inquiring whether she was looking for a pimp, and of stating his price as $2,500, were acts that the trier of fact could reasonably conclude were designed to induce Sarah to engage in a commercial sex act.

There is no change in the judgment.

Appellant's petition for rehearing filed on March 26, 2026, is denied.

DETJEN, Acting P. J.

WE CONCUR:

PEÑA, J.

HARRELL, J.

2.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHARRONE SHERRICK BERRY,<br><br>    Defendant and Appellant. | F088801<br><br>(Super. Ct. No. 23CM1631)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Galen N. Farris and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following his waiver of the right to a jury trial, defendant Charrone Sherrick Berry was convicted by the trial court of one count of human trafficking of a minor for a sex act. On appeal, defendant asserts (1) his jury trial waiver was not made knowingly, intelligently, and voluntarily, (2) he could only be convicted of attempted human trafficking, and (3) insufficient evidence supports his conviction. We affirm.

## PROCEDURAL BACKGROUND

On May 14, 2024, the Kings County District Attorney filed a first amended information, charging defendant with human trafficking of a minor for a sex act (Pen. Code, § 236.1, subd. (c)(1);[1] count 1) and pandering (§ 266i, subd. (a)(2); count 2). As to both counts, the information alleged defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

On August 1, 2024, at the prosecution's request, the trial court dismissed count 2. After defendant waived his right to a jury trial, the court found defendant guilty on count 1 following a bench trial. The court also found true the prior strike conviction allegation.

The trial court sentenced defendant on October 8, 2024, to a term of imprisonment of five years on count 1, which was doubled to 10 years under the Three Strikes law.

Defendant filed a timely notice of appeal on October 14, 2024.

---

[1] All further statutory references are to the Penal Code.

FACTS

## I.    Prosecution evidence

### *Defendant messages "Sarah" on a social media website*

K. Kurtz, a special agent of the California Department of Justice, was assigned to the human trafficking and sexual predator apprehension team.  As part of an investigation, Kurtz posed as a 17-year-old named "Sarah" on a social media website.[2]

On May 5, 2023, defendant messaged Sarah on the website, writing:  "What's happening Sarah."  Kurtz opened defendant's profile and observed several pictures on the profile.  Using a government database search tool, Kurtz entered the date of birth and location listed on defendant's social media profile which produced a person with defendant's name.  The government database search provided a picture of that person. Kurtz then compared that picture with the pictures on the social media profile and determined they were the same person.  One of the pictures from the social media profile was marked as Exhibit 1.

Sarah responded back to defendant's message, and a conversation followed. During this conversation, Sarah told defendant that she was "trappin[g]."  According to Kurtz, "trapping" in the "human trafficking culture" means to "actively be making money working as a prostitute."  Defendant asked about her "situation."  Sarah told defendant that her "pimp" was in jail for a long time so she no longer had one.  Defendant asked Sarah if she was on bad terms with her pimp and added, "[I]f [you're] choosing [you] can just say that too lol."  "Choosing," Kurtz testified, is short for "choosing up," a process by which a prostitute chooses a pimp to work for.  Kurtz further testified the "choosing

---

[2] We recognize "Sarah" is not a real person as the profile associated with her identity was operated by Kurtz.  For clarity, we refer to the person purportedly communicating from the profile as "Sarah," rather than Kurtz.  We refer to Kurtz instead when referencing his actions while not under the guise of Sarah's identity.

up" process typically involves a payment by the prostitute to the pimp beforehand, called a "choose-up fee."

Sarah then told defendant she was 17 years old. Defendant asked when she would turn 18 years old, and Sarah responded, "Sept[ember] 2." Defendant noted September was "around the corner," and asked Sarah if she was going to be an "asset." Sarah asked defendant what his "fee" was. Defendant asked Sarah if she was law enforcement, which Sarah denied. Defendant asked Sarah how "quickly" she could "come up with" $2,500. Sarah replied likely by the following weekend. Sarah also informed defendant she was working in Sacramento at the time.

At another point during their communications, defendant told Sarah he would move her unless she was already making money. Sarah responded that she was already making money, so there was no reason for her to leave Sacramento. Sarah and defendant continued messaging each other through the social media website over the course of several days.

**_Custodial interrogation_**

On May 31, 2023, special agents M. Kutz and J. Robinette contacted defendant at the parole office in Fresno, California. Robinette read defendant his _Miranda_[3] rights. Defendant waived those rights and agreed to speak with the agents.

Defendant told the agents he did not remember speaking with someone online. Robinette asked defendant to hand over his cellphone, which defendant refused to do. Kutz told defendant he was under arrest and to hand over his cellphone. Defendant took his cellphone out of his pocket and threw it against the wall before jumping over the desk, picking up his cellphone, and throwing it against the wall again.

---

[3] _Miranda v. Arizona_ (1966) 384 U.S. 436.

## II.    Defense evidence

### *Defendant's trial testimony*

Defendant scheduled a meeting with his parole agent about employment opportunities.  On that day, May 31, 2023, defendant arrived at the parole office and waited in the lobby.  Defendant was approached by two men, the special agents.  Defendant was confused as he expected his parole agent to be there.

When the agents asked him questions, defendant told them he did not know the person that they were talking about.  The "whole situation" made defendant "feel uncomfortable," so he broke his phone because he "didn't clearly understand what they were . . . there for."  According to defendant, the agents also presented to defendant a picture of a person that "looked like it could be" him.  Defendant admitted he was the person in Exhibit 1.

## DISCUSSION

## I.  Jury Trial Waiver

### A.    *Additional Background*

At a hearing on April 22, 2024, defense counsel informed the trial court:  "we would like to waive our right to a jury trial, and then we would like to adjust the trial date."  The court stated to defendant he has a "right to have a jury trial," which means, "people who live in the county would come to court and listen to the evidence, and they decide if it shows beyond a reasonable doubt that you're guilty of the charges."  The court also stated defendant has "a right to have a court trial."  The court explained:

> "It is conducted in exactly the same way.  The rules of evidence are the same, the burden of proof is the same.  It is just instead of a jury, it is a judge that listens to the evidence, and then the judge makes a determination as to whether or not they think it has been proven beyond a reasonable doubt."

The court asked defendant if he understood the right to a jury trial.  Defendant responded, "Yes, sir."  The court also asked defendant if he understood the right to a

court trial, to which defendant again responded, "Yes, sir." The court then asked: "At this time you would like to waive your right to a jury trial and . . . exercise the right to a court trial?" Defendant replied, "Yes, sir."

The court accepted defendant's waiver of his right to a jury trial. The court then asked defense counsel if he joined in defendant's waiver of his right to a jury trial. Defense counsel replied, "Yes, your Honor." The court and the parties then discussed dates for trial.

### B.      *Applicable Law and Standard of Review*

"Under the federal Constitution and our state Constitution, a defendant in a criminal prosecution has a right to a jury trial." (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).) "However, a 'jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.' " (*Ibid.*) A "defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ' " 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,' " ' as well as voluntary ' " 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " ' " (*People v. Collins* (2001) 26 Cal.4th 297, 305.)

There is no "specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) However, our Supreme Court has offered the following guidance:

> "Going forward, we recommend that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence. We also recommend

6.

that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 169–170.)

Our Supreme Court made clear in *Sivongxxay* that this guidance was "advisory" and "not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) The court further stated that a trial court's "adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid." (*Ibid*.) " ' "Matters of reality, and not mere ritual, should be controlling." ' " (*Ibid*.)

We examine "the totality of the circumstances" in determining whether a defendant has made a knowing and intelligent waiver of his right to a jury trial. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.)

## C.     *Analysis*

The trial court's colloquy was not inadequate. The court first stated how a jury trial operates: "people who live in the county would come to court and listen to the evidence, and they decide if it shows beyond a reasonable doubt that you're guilty of the charges." Next, the court stated a court trial "is conducted in exactly the same way" and the "rules of evidence" and the "burden of proof" are "the same." The court then told defendant the difference is "just instead of a jury, it is a judge that listens to the evidence, and then the judge makes a determination as to whether or not they think it has been proven beyond a reasonable doubt." The court confirmed with defendant that he understood both the right to a jury trial and the right to a court trial. The court then asked defendant if he would like to waive his right to a jury trial in order to exercise his right to

a court trial, and defendant responded, "Yes, sir." The court also asked whether defense counsel joined in defendant's waiver, which he did.

Defendant had experience in the criminal justice system. The available record shows defendant had suffered three prior convictions: one conviction occurred in 2020, and the other two convictions occurred by plea in 2022.[4] (*Parke v. Raley* (1992) 506 U.S. 20, 37 ["evidence of a defendant's prior experience with the criminal justice system [is] relevant to the question whether he knowingly waived constitutional rights"].) Defendant asserts that his experience with the criminal justice system was "limited" because the record does not show he had previously been convicted by a jury. But a defendant's criminal history is not "limited" merely because his prior convictions did not result from a jury trial. (See, e.g., *People v. Langdon* (1959) 52 Cal.2d 425, 432 [noting the defendant had "been before the criminal courts on at least three previous occasions" in finding a valid waiver].) A prior conviction by plea agreement is relevant experience in the criminal justice system. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 80 ["Of course, before taking the plea, the trial court must admonish the defendant of the constitutional rights that are being waived, as well as the direct consequences of the plea."]; *People v. Lytle* (1992) 10 Cal.App.4th 1, 4 ["When a defendant pleads guilty or nolo contendere, whether or not the plea is pursuant to a plea bargain, he must be advised of and waive his rights of self-incrimination, confrontation and jury trial [citations], and must be advised of the direct consequences of the plea, including the maximum possible penalty."].) Defendant's experience in the criminal justice system supports the conclusion that his waiver was made knowingly and intelligently.

Defendant observes the trial court's colloquy omitted three out of the four "basic mechanics of a jury trial" recommended by *Sivongxxay*. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) Specifically, defendant notes the trial court failed to inform him: a jury is made

---

[4] As defendant notes, the record does not show how he was convicted in 2020.

up of 12 members of the community, all 12 jurors must unanimously agree in order to render a verdict, and that he could participate in jury selection through his counsel. But *Sivongxxay* declined to prescribe any specific set of advisements as prerequisites for a waiver's validity. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170 ["[W]e emphasize that our guidance is not intended to limit trial courts to a narrow or rigid colloquy."].) *Sivongxxay* made clear those four "basic mechanics of a jury trial" were only "general guidance" for a trial court's waiver colloquy. (*Id.* at p. 169.) The court's omission of three of the four general mechanics is not determinative of the waiver's validity. (*Id.* at p. 170 ["a trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid"].)

While the trial court's advisements here departed from those recommended by *Sivongxxay*, the extent of the difference does not render the colloquy legally insufficient. The court informed defendant that a jury is made up of "people who live in the county" and that "they decide if it shows beyond a reasonable doubt that [defendant is] guilty of the charges." We observe that these advisements did not precisely inform defendant that "a jury is made up of *12 members* of the community" or "*all 12 jurors must unanimously agree* in order to render a verdict." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169, italics added.) But the court's colloquy partially covered those two mechanics. Compared to the advisements recommended in *Sivongxxay*, these statements only fall short because they failed to specifically mention that a jury is composed of "12" members, and that those 12 jurors must "unanimously" agree. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) However, neither shortcoming compels a conclusion that the waiver was invalid. (See *id.* at p. 168 ["the presence or absence of a reference in a colloquy to [the requirement of unanimity among the 12 jurors], or to the impartiality requirement, is not necessarily determinative of whether a waiver meets constitutional standards"]; *People v. Tijerina* (1969) 1 Cal.3d 41, 45–46 [finding a jury waiver knowing and intelligent even though the defendant was not advised of the unanimity requirement].) Similarly, though the court

9.

failed to advise defendant that he could participate in jury selection, this is not determinative. (See *People v. Weaver* (2012) 53 Cal.4th 1056, 1072–1074 [finding a jury waiver knowing and intelligent even though the defendant was not advised of his right to participate in jury selection].) These deficiencies do not outweigh other circumstances relevant to the inquiry, including the extent of the court's questioning coupled with defendant's experience in the criminal justice system.

Defendant further notes the record does not show whether defense counsel discussed the jury trial waiver with defendant. Relying on *People v. McCray* (2023) 98 Cal.App.5th 260 (*McCray*), defendant appears to argue that this aspect should be afforded significant weight in the totality of the circumstances analysis.

In *McCray*, the trial court accepted the defendant's waiver of his right to have a jury determine whether he needed to be recommitted to a state hospital. (*McCray*, *supra*, 98 Cal.App.5th at p. 270.) During the colloquy on waiver, the court allowed the defendant's counsel to question the defendant on the issue. (*Id*. at p. 269.) Defense counsel asked if the defendant remembered that the two had "talked about [the defendant having] the right to have a jury listen to the evidence in this case and make the decision on whether or not you need more treatment at the hospital." (*Ibid*.) After the defendant responded affirmatively, defense counsel then asked him if he "decided that [he] wanted to have the judge listen to the evidence and make the decision, to waive your right to a jury, correct?" (*Ibid*.) The defendant replied, "Yeah, yeah." (*Id*. at p. 270.) Defense counsel then stated: "Okay. So the judge is supposed to make sure that you understand that you have a right to have a jury but that you are waiving that right in order to have the judge make the decision." (*Ibid*.) Defense counsel asked if he understood that, to which defendant stated, "I waive that right." (*Ibid*.) Neither defense counsel nor the court asked any further questions or gave any further advisements. (*Ibid*.)

The Court of Appeal in *McCray* determined the record failed to show a knowing and intelligent waiver of the right to a jury trial. (*McCray*, *supra*, 98 Cal.App.5th at

p. 273.)  The *McCray* court noted the trial court "did not take any steps itself to determine if [the defendant] understood what a jury trial entailed or how it differed from a bench trial."  (*Ibid*.)  *McCray* observed "[t]here was no discussion between the court and [the defendant] about how a jury trial works or the difference between a bench trial and a trial by jury."  (*Ibid*.)  Further, *McCray* observed "[t]he court did not even ask [defense counsel] if he concurred with [the defendant's] waiver decision."  (*Ibid*.)

*McCray* is distinguishable from this record.  Here, the court led the questioning and advisement of defendant.  The court explained to defendant what a jury trial consists of, and what a court trial consists of.  The court also explained some of the ways in which the two differ.  Moreover, defendant stated he understood each advisement given to him by the trial court.  The court also asked defense counsel if he concurred with defendant's waiver, to which defense counsel responded affirmatively.  The steps taken by the trial court here go well beyond those in *McCray*.

In addition to the comments not made by the trial court, defendant also takes issue with the comments the court did make.  Specifically, defendant suggests that the trial court "minimized" his right to a jury trial by stating a court trial "is conducted in exactly the same way."  We disagree.  First, the court was not obligated to fully explain the differences between a court trial and jury trial.  (See *People v. Wrest* (1992) 3 Cal.4th 1088, 1105 ["There is no constitutional requirement that appellant understand 'all the ins and outs' of a jury trial in order to waive his right to one."].)  But the court further explained:  "The rules of evidence are the same, the burden of proof is the same.  It is just instead of a jury, it is a judge that listens to the evidence, and then the judge makes a determination as to whether or not they think it has been proven beyond a reasonable doubt."  We cannot conclude that these advisements were misleading or minimized his right to a jury trial.

In sum, the totality of the circumstances demonstrates defendant's jury trial waiver was made knowingly, intelligently, and voluntarily.

11.

## II. Attempted Human Trafficking of a Minor

Defendant contends his conviction for human trafficking of a minor for a sex act (§ 236.1, subd. (c)) must be reversed because the conviction is impermissible as a matter of law. Specifically, he argues he could only be convicted of the "attempt prong" of section 236.1, subdivision (c), because there was not an "actual minor victim." The People ask us to affirm the judgment because the statute proscribes an attempt to induce a minor even when no actual minor is involved. We agree with the People.

Section 236.1, subdivision (c), provides, in relevant part: "A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking."

Under the statute, "the word 'attempts' operates to modify all of the elements of the statute, making it unnecessary to prove that the defendant targeted an actual minor victim." (*People v. Moses* (2020) 10 Cal.5th 893, 907 (*Moses*).) "Subdivision (c) specifically targets trafficking minors." (*Id*. at p. 908.) "A *completed* violation of subdivision (c) will, obviously, involve the inducement of a particular person, and that person must be a minor." (*Ibid*.) "By contrast, to violate subdivision (c) as an *attempt*, the defendant must *intend* to induce a minor, but the target of that inducement need not be an actual minor." (*Ibid*.) "This understanding of the statute supports a conclusion that, as long as the defendant has attempted to induce a person and intends that the object of his inducement be a minor, the elements of the attempt provision are satisfied." (*Ibid*.)

The Supreme Court in *Moses* summarized the two different ways a defendant can violate section 236.1, subdivision (c):

> "In sum, [section 236.1, subdivision (c)] operates as follows: To be convicted of the completed crime of *inducing* a minor to engage in a commercial sex act, the person induced must be a minor. To commit the crime of *attempting to induce* a minor, the defendant must act with the

12.

‘ "specific intent to commit the [completed] crime" ’ [citation], i.e., the intent to cause, induce, or persuade *a minor* to engage in a commercial sex act, at least when no actual minor victim is involved [citation]. The defendant must act with the additional intent to effect or maintain a violation of one of the offenses enumerated in the statute. If these elements are met, the fact that the particular target of his efforts is not actually a minor is not a defense. Under both theories the defendant is guilty of 'human trafficking' (§ 236.1[, subd. ](c)) and subject to the same punishment." (*Moses*, *supra*, 10 Cal.5th at pp. 912–913.)

Relying on *Moses*, defendant asserts he could not be convicted under the statute because a "completed violation" of section 236.1 requires an actual minor victim. *Moses* does not support defendant's reading of the statute. *Moses* recognized that an attempt can be the basis for a conviction under section 236.1, subdivision (c). (*Moses*, *supra*, 10 Cal.5th at p. 908 ["[Section 236.1, subdivision (c)] conveys the voters' intent that human trafficking of a minor, whether successfully completed or merely attempted, is to be punished in a uniform way."].) *Moses* held that section 236.1, subdivision (c) proscribes both the completed act of inducing an actual minor, and the attempt to induce a person believed to be a minor. (*Moses*, at p. 913.) Put differently, a violation of section 236.1 is *completed*, in colloquial terms, when a person *attempts* to induce a minor to engage in a commercial sex act. (See *Moses*, at p. 913.) Moreover, *Moses* made clear that an attempt to induce a minor does not require an actual minor. (*Id.* at p. 913 ["If [the] elements [of section 236.1, subdivision (c)] are met, the fact that the particular target of his efforts is not actually a minor is not a defense."].)

As discussed in further detail in part III. of the discussion below, defendant discussed with Sarah the prospect of her working for him as a prostitute, even after she represented to him she was 17 years old. Defendant discussed with Sarah his "fee" of $2,500 and asked how soon she could get him the money. Although defendant did not successfully induce Sarah to engage in a commercial sex act, as Sarah was not a real person, the crime was committed when defendant attempted to induce Sarah with the intent to cause, induce, or persuade her to engage in a commercial sex act. (See *Moses*,

*supra*, 10 Cal.5th at p. 913.) While *Moses* separates the two different ways a defendant can violate section 236.1, subdivision (c), the court made clear that both may constitute a violation of that section. (*Moses*, at p. 913 ["Under both theories the defendant is guilty of 'human trafficking' (§ 236.1[, subd. ](c)) and subject to the same punishment."].) For that reason, we reject defendant's contention that his conviction for human trafficking of a minor for a sex act must be reversed as a matter of law.

Alternatively, defendant urges us to amend the abstract of judgment to reflect that his conviction under section 236.1 occurred as result of the attempt prong, specifically, "Attempted Human Trafficking of a Minor for a Sex Act." We decline to do so. Again, a violation of section 236.1 already encompasses an attempt. (See *Moses*, *supra*, 10 Cal.5th at p. 913; *id*. at p. 902 ["[Section 236.1, subdivision (c)] codifies the crime of attempted human trafficking of a minor and punishes actual inducement and attempted inducement in the same way."].) Defendant also does not provide any authority supporting his request. We see no need to amend the abstract of judgment.

## III.  Sufficiency of the Evidence

Defendant contends the evidence was insufficient to support his conviction of human trafficking of a minor for a sex act. The People disagree, as do we.

### A.  *Applicable Law*

"To commit the crime of *attempting to induce* a minor, the defendant must act with the ' "specific intent to commit the [completed] crime" ' [citation], i.e., the intent to cause, induce, or persuade *a minor* to engage in a commercial sex act, at least when no actual minor victim is involved [citation]." (*Moses*, *supra*, 10 Cal.5th at pp. 912–913.) In addition, "[t]he defendant must act with the additional intent to effect or maintain a violation of one of the offenses enumerated in the statute." (*Id*. at p. 913.) Sections 266h and 266i are among those enumerated offenses. (§ 236.1, subd. (c).)

Section 266i has six subparts defining the various ways the crime of pandering may be committed. (See *People v. Campbell* (2020) 51 Cal.App.5th 463, 485; see also

14.

*People v. Dixon* (2011) 191 Cal.App.4th 1154, 1159–1160 [defining pandering as "the business of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute"].) "The statutory subparts or alternatives are not mutually exclusive, i.e., the subparts can be violated at the same time." (*Campbell*, at p. 485.) Section 266i, subdivision (a)(1) states that a person is guilty of pandering if he "[p]rocures another person for the purpose of prostitution." In this context, the term "procures" means " 'assisting, inducing, persuading or encouraging' [another] to engage in prostitution." (*Campbell*, at p. 485.) Subdivision (a)(2) of section 266i proscribes: "By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute." The proscribed activity of encouraging someone to become a prostitute "includes encouragement of someone who is already an active prostitute, or an undercover police officer." (*People v. Zambia* (2011) 51 Cal.4th 965, 981 (*Zambia*).)

The act of pimping is proscribed by section 266h, subdivision (a). (See § 266h, subd. (a); *People v. Scally* (2015) 243 Cal.App.4th 285, 292.) Subdivision (b) of that section states, in pertinent part: "Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, . . . or who solicits or receives compensation for soliciting for the person, when the prostitute is a minor, is guilty of pimping a minor, a felony[.]" (§ 266h, subd. (b).)

### B. *Standard of Review*

For a claim of insufficient evidence, we assess "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66 (*Snow*).) We view "the trial evidence in the light most favorable to the prosecution and presum[e] every fact the [trier of fact] could reasonably deduce

15.

from that evidence." (*People v. Pearson* (2012) 53 Cal.4th 306, 319.) " ' "We do not reweigh evidence or reevaluate a witness's credibility." ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) " 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*Ibid*.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the [trier of fact]'s verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

### C.    *Analysis*

Defendant's conviction for human trafficking of a minor for a sex act (§ 236.1, subd. (c)) is supported by substantial evidence. As we stated above, an attempted inducement of a minor suffices for a conviction under the statute. (*Moses*, *supra*, 10 Cal.5th at p. 913.) Defendant used a social media website to contact Sarah, who told him she was "trappin[g]," meaning, actively working as a prostitute. Defendant asked what her "situation" was. When Sarah told him she no longer had a "pimp," defendant asked her if she was "choosing," meaning, looking for another pimp. When Sarah told defendant she was 17 years old, he asked her when she would turn 18 years old. Sarah asked defendant about his "fee," and, after he asked her if she was law enforcement, defendant asked Sarah how quickly she could pay him $2,500. From this, the trier of fact could have reasonably concluded defendant intended to induce Sarah to engage in a commercial sex act.

Defendant asserts the evidence does not support a reasonable inference that he specifically intended to induce a minor to engage in a sex act. He also notes the evidence reasonably supports contrary inferences regarding defendant's intent, i.e., that defendant was "merely playing along" for a brief period of time with an "unknown texter by the name of Sarah," since he was the one who stopped texting her. Defendant notes he stated

16.

"lol" after his reference to "choosing." But even if contrary inferences could be reasonably drawn from the evidence, reversal is not warranted unless defendant could not be convicted under any hypothesis. (*People v. Jennings* (2010) 50 Cal.4th 616, 639 ["If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."]; *Zamudio*, *supra*, 43 Cal.4th at p. 357.) Substantial evidence supported the trier of fact's findings.

Defendant further argues the evidence was insufficient to prove his intent to violate sections 266i and 266h. We disagree. As stated above, defendant's conversation with Sarah showed he intended for her to work for him as a prostitute. He discussed with Sarah the fee she would have to pay in order to work for him. (§ 266i.) For purposes of section 266i, it did not matter that Sarah was actually an undercover police officer. (*Zambia*, *supra*, 51 Cal.4th at pp. 977, 981.) Similarly, defendant's conversation showed he intended to derive financial gain from Sarah's prostitution. (§ 266h.) For the same reasons stated above, the trier of fact could reasonably have concluded defendant possessed the requisite additional intent of violating sections 266i and 266h.

Defendant observes the prosecution did not mention section 266i or 266h in closing arguments. It appears the prosecution instead referenced section 647, which is not among the enumerated offenses in section 236.1. (§ 236.1, subd. (c).) Based on this, defendant argues a claim of substantial evidence as it relates to sections 266i and 266h should be treated as forfeited or, alternatively, as implied concessions of these issues. However, "[i]t is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the [factfinder]." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.) Under the applicable standard of review, we are not limited to the theory presented by the prosecution. (See *ibid*.) We instead may assess "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence[.]" (*Snow*, *supra*,

30 Cal.4th at p. 66.)  There was substantial evidence defendant possessed the additional intent to violate sections 266i and 266h.

## **DISPOSITION**

The judgment is affirmed.


DETJEN, Acting P. J.

WE CONCUR:


PEÑA, J.


HARRELL, J.